# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| X SOCIAL MEDIA LLC,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>X CORP.<br><br>　　　　　　　　Defendant. | Civil Action No. _____<br><br>**COMPLAINT** |

Plaintiff, X SOCIAL MEDIA LLC, by and through its attorneys, alleges as follows:

## NATURE OF ACTION

1.　This is an action for violation of Sections 32 and 43 (a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125; for violations of the common law of the State of Florida arising from unfair competition and trademark and service mark infringement; and for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").

## THE PARTIES

2.　Plaintiff, X SOCIAL MEDIA LLC ("X Social Media") is a Florida limited liability company organized and existing under the laws of Florida.

3.　Upon information and belief, Defendant, X CORP. ("X Corp."), is a corporation organized under the laws of Nevada with a principal place of business listed as 701 S Carson St. Suite 200, Carson City, Nevada 89701.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over Plaintiff's federal claims and the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. §§ 1121 and 1225. In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. Furthermore, upon information and belief, this Court also has diversity jurisdiction over this civil action, as diversity of citizenship exists amongst the parties and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00).

5. Upon information and belief, this Court has personal jurisdiction over Defendant because Defendant has transacted business, regularly does business, and supplies services in the State of Florida and in this District and should reasonably expect their acts to have legal consequences within the State of Florida and this District. Additionally, as alleged herein, this civil action arises out of Defendant's marketing, offering, and sale of Defendant's services in the State of Florida and in this District.

6. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the ongoing events giving rise to the claims occurred in this judicial district and Defendant is subject to personal jurisdiction within this judicial district.

**BACKGROUND FACTS**

7. X Social Media, LLC is a vanguard in utilizing social media and marketing technology to connect consumers with legal services in situations where those harmed would otherwise remain voiceless and without remedy. X Social Media advertises its services under the federally registered trademark X SOCIALMEDIA (the "X SocialMedia Mark"). X Social Media has continuously used the X SocialMedia Mark in commerce since at least as early as 2016, entitling its mark to a presumption of incontestability. Its significant investment in marketplace awareness has resulted in creating a distinctive "X" mark successfully associated with its social media advertising services. From the company's inception, the "X" has signified the act of obtaining hope and help via the unprecedented power of social media for people facing a range of injustices.

8. X Corp. ("X Corp."), formerly Twitter Inc, is an online news and social networking site acquired by billionaire Elon Musk in 2022. In a move that captured national and international attention, Twitter publicly launched a stunning rebrand campaign in July 2023 announcing that it was adopting the mark "X" (the "Infringing Mark") as the brand for its formidable social media platform. X Corp.'s use of the "X" mark and recent attempt to register the mark in association with social media, business data, promotion and advertising, business consulting, market research services, and advertising services (collectively, the "Infringing Services") necessitates this action because its conduct has caused and will continue to cause serious irreparable harm to X Social Media.

**X Social Media's Creation and Use of Its "X" Mark**

9. X Social Media has offered its advertising and social media services connecting law firms and those in need of advocates since 2016. It was among the first to channel the power of Facebook, now Meta, as a mechanism for educating victims of torts and connecting them with advocates committed to turning the tide on societal harms.

10. X Social Media, founded in 2015 by Jacob Malherbe, began using the X SocialMedia Mark with its distinctive and dominant letter "X" to signify the beginning of a life-changing journey towards justice. The mission was to use the power of social media, advertising, and data analysis to educate consumers about dangerous goods and services and to provide consumers with access to legal advocates who could give victims a voice. **Exhibit A.**

11. In addition to the symbolic emphasis of the "X," X Social Media frequently emphasizes the "X" portion of its mark throughout its advertising, blogs, and newsletters highlighting its work (i.e., "The X Blog" and "X Weekly"). **Exhibit B**.

12. X Social Media has honed its strategies primarily through Meta's Facebook platform, investing over $400 million in advertising to ensure that potential victims are aware of potentially dangerous goods and services, as well as aware of potential avenues for redress if they have been harmed.

13. X Social Media advertises its services to consumers, including businesses and law firms, through its website, xsocialmedia.com; books authored

by its founder; a quarterly magazine; and extensive participation in tradeshows and conferences. X Social Media has invested over $2 million to date in building brand awareness and reaching consumers.

14. X Social Media's consistent messaging and strategic use of social media and data analytics to assist law firms has resulted in impressive growth. INC 5000 ranked X Social Media as the 159th fastest growing private company in the United States in 2020, highlighting its staggering 2,439% 3-year revenue growth.

15. X Social Media has further protected its brand investment by registering its trademark "X SocialMedia" with the United States Patent and Trademark Office ("USPTO") for use in association with advertising services. **Exhibit C**. The X SocialMedia Mark has been used exclusively and continuously for over five years and has become incontestable.

**X Corp.'s Unlawful Infringing Use of the "X" Mark**

16. On or about July 2023, Twitter announced its plan to rebrand its popular social media application under the mark "X". Upon information and belief, Twitter knew of X Social Media's preexisting rights prior to launching its media campaign.

17. X Corp. made international filings for "X" in March of 2023. These international filings were used as the basis for seven applications before the USPTO (Ser. Nos. 98193518, 98193522, 98193524, 98193527, 98193528,

98193530, and 98193533). These applications are granted a federal priority date of March 24, 2023. **Exhibit D**.

18. Court filings formally acknowledged the formation of the legal entity X Corp. as early as April 2023.

19. X Corp.'s rebranding of Twitter to "X" has been the subject of articles published by numerous national outlets such as The New York Times, BBC, Rolling Stone, The Washington Post, CNN, Bloomberg.com, Reuters, and The Wall Street Journal. **Exhibit E.**

20. The change to "X" correlates with Musk's plans for continued expansion in comprehensive communications, as well as enhanced advertising services connecting businesses who advertise on the "X" platform with social media users. **Exhibit F**.

21. The media presence and national attention on the "X" rebrand means X Corp. is now known to most social media users and American consumers. X Corp.'s prominent and dramatic unveiling of "X" was a harbinger of change for the renowned social network. "X" is touted by Musk as a brand for an "everything app" with expansive user communications and exploitation of consumer data to connect targeted audiences with business and financial service providers.

22. The media coverage and attention generated by the launch has quickly caused reverse confusion and led consumers to believe that X Social Media's advertising services are being offered by or are associated with X Corp.

As "X" is a social media platform, consumers naturally conflate "X SocialMedia" as an X Corp.'s social media platform. Even media outlets covering Twitter's rebrand are using the X SocialMedia Mark in its entirety in headlines while referencing X Corp. **Exhibit G.**

23. X Social Media has already suffered loss in revenue that correlates with X Corp.'s rebrand and use of the mark "X." It is highly probable this reverse confusion will continue to X Social Media's financial detriment and to the detriment of the consumers who use and benefit from its services.

24. X Corp.'s adoption of the "X" mark exemplifies exceptional willful conduct, as it had a legal duty to conduct due diligence and avoid infringing the existing rights of X Social Media. X Corp. was well aware of its legal duty and chose to pursue its "X" mark agenda over avoiding consumer confusion and harm to X Social Media.

25. As a sophisticated company with a substantial intellectual property portfolio, including numerous federally registered trademarks and applications for its "X" marks, X Corp. would have conducted due diligence clearance searches and been aware of X Social Media's preexisting rights.

26. X Social Media attempted to resolve the infringing use of its trademark prior to filing this action in federal court by sending X Corp. a cease-and-desist letter in August 2023. X Corp. declined to cease use of the mark and continued to disregard the rights of X Social Media.

27. Despite its knowledge of X Social Media's trademark rights, X Corp. filed multiple trademark applications for the use of the mark "X", including an application for the following services: Business data analysis; promotional services; business consulting and information services; business, consumer, and market research.  These services are not only identical and closely related to those offered by X Social Media, but they also encompass services and market channels where X Social Media has labored for years to successfully cultivate brand awareness for its X SocialMedia Mark among consumers.

28. In a short time, X Corp. has wielded its social media clout, marketing resources, and overall national notoriety to dominate consumer perception of its "X" mark. This has resulted in the perception that X Corp. is the source for services offered under the X SocialMedia Mark, despite the fact that X Social Media has offered services under its own X mark for over eight years.

29. Even a simple Google Search with the query "x social media" will lead to the following answer.



30. X Corp.'s disparate market strength and advertising leverage is leading and will continue to lead consumers to believe that X Social Media is associated or affiliated with X Corp. Unfortunately, such a perception is financially and strategically harmful to X Social Media's brand and consumer perception of its mission-driven goals.

**FIRST CAUSE OF ACTION**
**(Registered Trademark and Service Mark Infringement)**

31. Plaintiff repeats and incorporates by reference each of the averments contained in paragraphs 1 through 30 of this complaint with the same force and effect.

32. Plaintiff owns all rights, title, and interest in the X SocialMedia Mark, which it has used continuously in U.S. commerce since at least as early as 2016.

9

33. Plaintiff has never authorized Defendant to market and/or offer services or goods bearing the X SocialMedia Mark or confusingly similar marks.

34. Defendant began its infringing use of Plaintiff's mark at least as early as July 2023 when it engaged in a nationwide rebranding of its popular social media application Twitter, the launch of which was accompanied by wide-scale media coverage through print, television, and internet publications.

35. Upon information and belief, Defendant's actions are willful and intentional with full knowledge of Plaintiff's prior rights in the X SocialMedia Mark.

36. Defendant's prolific unauthorized use in commerce of "X" and "X Social Media" formative marks infringes on Plaintiff's rights in the X SocialMedia Mark and violates 15 U.S.C. § 1114 because it renders Defendant's services confusingly similar to Plaintiff's X SocialMedia Mark and creates the erroneous impression in consumers' minds that Plaintiff's services are approved, sponsored, endorsed, developed, or are licensed by, or are in some way affiliated with Defendant.

37. Defendant's actions have caused actual confusion and reverse confusion amongst consumers and will likely continue to lead consumers to incorrectly conclude that Plaintiff's services originate from or somehow have become connected with Defendant, damaging both Plaintiff and the public.

38. As a result of Defendant's trademark infringement, Plaintiff has suffered and will continue to suffer damages, including loss of income, profits, and goodwill.

39. All of Defendant's aforementioned acts are "exceptional", and Plaintiff is entitled to treble damages and attorney's fees under 15 U.S.C. § 1117.

40. Defendant's acts have caused irreparable damage and injury to Plaintiff and will continue to cause irreparable injury to Plaintiff unless Defendant is enjoined from further infringing upon Plaintiff's registered trademark.

41. Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Florida Common Law Unfair Competition)

42. Plaintiff repeats and incorporates herein by reference each one of the averments contained in paragraphs 1 through 41 of this complaint with the same force and effect.

43. Defendant's infringing use of "X" in connection with its services constitutes unfair competition. Defendant's conduct is deceptive and misleading and is likely to cause further consumer confusion.

44. Defendant's conduct willfully disregards Plaintiff's valuable intellectual property rights in its X SocialMedia Mark.

45. Defendant's acts have caused irreparable damage and injury to Plaintiff and will continue to cause irreparable injury to Plaintiff unless Defendant is enjoined from further infringing upon Plaintiff's trademark.

46. Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Florida Deceptive and Unfair Trade Practices Act)

47. Plaintiff repeats and incorporates herein by reference each of the averments contained in paragraphs 1 through 46 of this complaint with the same force and effect.

48. The foregoing conduct by Defendant violates § 501.204 of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

49. Defendant offers its social media and social media advertising services under the Infringing Mark nationwide, including throughout the state of Florida.

50. Defendant's use of the Infringing Mark constitutes an unfair method of competition under FDUTPA and is an unconscionable and unfair practice in the conduct of trade or commerce.

51. Defendant's rebranding pervaded national news media and was broadcast to consumers through all channels, including consumers in the state of Florida, resulting in present consumer confusion and the probability of ongoing

consumer confusion, as to Plaintiff's affiliation, connection, or association with Defendant and its services.

52. Defendant's acts have caused irreparable damage and injury to Plaintiff and will continue to cause irreparable injury to Plaintiff unless Defendant is enjoined from further infringing upon Plaintiff's registered trademark.

53. Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Common Law Trademark and Service Mark Infringement)

54. Plaintiff repeats and incorporates herein by reference each of the averments contained in paragraphs 1 through 53 of this complaint with the same force and effect.

55. Plaintiff first used the X SocialMedia Mark in commerce at least as early as 2016.

56. Plaintiff has invested considerable time, effort, and money in the X SocialMedia Mark over the past eight years, resulting in established goodwill and reputation amongst consumers.

57. Plaintiff's X SocialMedia Mark contains the distinctive "X" in connection with its advertising services, and Plaintiff's X SocialMedia Mark is subject to trademark protection in Florida.

58. Defendant's use of the Infringing Mark in connection with its Infringing Services is confusingly similar to Plaintiff's X SocialMedia Mark and services.

59. Defendant was aware of Plaintiff's X SocialMedia Mark at the time it chose to rebrand Twitter, and Defendant was aware that consumer confusion was probable as a result of its rebrand.

60. Defendant's use of the Infringing Mark is without the permission, consent, or authorization of Plaintiff.

61. Defendant's national rebrand campaign has resulted in consumer confusion in the form of reverse confusion and will continue unless Defendant ceases use of the Infringing Mark.

62. Defendant's conduct violates Fla. Stat. § 495.131.

63. Defendant's acts have caused irreparable damage and injury to Plaintiff, which will likely continue unless Defendant is enjoined from further infringing upon Plaintiff's trademark.

64. Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in its favor against Defendant as follows:

A. An injunction permanently enjoining and restraining Defendant, its agents, servants, employees, successors, assigns, subsidiaries, related companies, parent companies, licensees, and all persons in active concert of participation with them:

1. From marketing, offering, selling or distributing services bearing the mark "X", X SOCIALMEDIA, or any confusingly similar variation(s) thereof;

2. From engaging in deceptive trade practices or acts in the conduct of Defendant's business by means of offering services in association with the X SocialMedia Mark.

B. Directing Defendant to remove all references to "X", X SOCIALMEDIA, and/or any confusingly similar variation(s) thereof contained in any advertising and/or marketing materials published by Defendant, including any and all social media posts.

C. Directing Defendant to publish corrective advertising to correct the consumer confusion caused by Defendant's infringing use of "X".

D. Directing Defendant to account to Plaintiff all profits resulting from Defendant's use of the "X", X SOCIALMEDIA, and/or any confusingly similar variation(s) thereof.

E. Awarding Plaintiff its damages from Defendant's unlawful and wrongful acts.

  F. Awarding Plaintiff three (3) times the amount of Plaintiff's damages or

Defendant's profits, whichever is greater.

  G. Awarding Plaintiff the cost and expenses incurred in connection with this action, as well as its reasonable attorneys' fees.

  H. Awarding Plaintiff such other and further relief as the Court may deem just and proper.


Date: October 2, 2023  `  Respectfully Submitted,

  Gerben Perrott, PLLC
  *Attorneys for X Social Media LLC*
  1050 Connecticut Ave NW
  Suite 500
  Washington, DC 20036
  Tel.: 202-579-0727


  By: /s/ Kathryn Kent
   Kathryn G. Kent, Esq.
   *Lead Counsel*
   VT #4455
   kkent@gerbenlawfirm.com

   Sophie Edbrooke, Esq.
   NY #6039838
   sedbrooke@gerbenlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Complaint was served via electronic mail to Defendants' attorney listed below, on this 2nd of October 2023.

        Respectfully Submitted,


        /s/ Kathryn Kent
          Kathryn G. Kent, Esq.