# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

X SOCIAL MEDIA LLC,

     Plaintiff,

v.

                              Case No. 6:23-CV-01903-JA-EJK

X CORP.,

     Defendant.

## DEFENDANT X CORP.'S MOTION TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 3

LEGAL STANDARD ...................................................................................... 6

ARGUMENT ................................................................................................... 7

   I.    The Complaint Fails to State a Claim for either Trademark Infringement or Unfair Competition ............................................................................... 7

     A.    Plaintiff's Trademark Rights Are in X SOCIALMEDIA, Not X ............... 7

     B.    The Complaint Fails to Plausibly Allege a Likelihood of Confusion ......... 9

        1.    Plaintiff's Trademark Protection Is Thin and Defendant Has Not Commercially Overwhelmed the Market ................................................. 11

        2.    Plaintiff Has Not Plausibly Alleged Actual Confusion .......................... 15

        3.    The Complaint's Allegations of Similarity Are Implausible ................. 17

        4.    The Parties Offer Different Services and Products ................................. 19

        5.    The Complaint Lacks Allegations Regarding the Parties' Sales Outlets and Customer Bases .................................................................................. 20

        6.    The Complaint Lacks Allegations Regarding an Overlap in Advertising .............................................................................................. 21

        7.    The Complaint Contains No Factual Allegations That Defendant Disregarded a Risk of Reverse Confusion ............................................... 22

   II.    The FDUTPA Claim Fails as a Matter of Law .............................................. 23

CONCLUSION............................................................................................... 25

LOCAL RULE 3.01(g) CERTIFICATION ................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................6

*Beaulieu Group LLC v. Mohawk Carpet Distrib.*,
    No. 4:15-CV-0124, 2017 WL 11634736 (N.D. Ga. Jan. 23, 2017)....................13

*Bilotta v. Citizens Info. Assocs., LLC*,
    No. 8:13-CV-2811, 2013 WL 12155486 (M.D. Fla. Dec. 20, 2013)...................24

*Brain Pharma, LLC v. Woodbolt Dist., LLC*,
    No. 12-CV-60141, 2012 WL 12838277 (S.D. Fla. May 1, 2012) .......................18

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*,
    169 So. 3d 164, 169 (Fla. 4th DCA 2015)..........................................................24

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*,
    No. 3:16-CV-186, 2018 WL 905752 (M.D. Fla. Feb. 15, 2018).........................24

*Cintas Corp. v. Unite Here*,
    355 F. App'x 508 (2d Cir. 2009)...........................................................................6

*CMR Const. & Roofing, LLC v. UCMS, LLC*,
    No. 21-CV-11183, 2022 WL 3012298 (11th Cir. July 29, 2022) ........................24

*Colgate-Palmolive Co. v. Carter-Wallace, Inc.*,
    432 F.2d 1400 (C.C.P.A. 1970) ...........................................................................9

*Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*,
    No. 2:18-CV-408, 2019 WL 277733 (M.D. Fla. Jan. 22, 2019) .........................25

*Corsello v. Lincare, Inc.*,
    428 F.3d 1008 (11th Cir. 2005)...........................................................................25

*D.B.C. Corp. v. Nucita Venezolana, C.A.*,
    464 F. Supp. 3d 1323 (S.D. Fla. 2020)................................................................17

*Dieter v. B & H Indus. of SW Fla., Inc.*,
    880 F.2d 322 (11th Cir. 1989) .............................................................................12

*Domond v. Peoplenetwork APS*,
   No. 16-CV-24026, 2017 WL 5642450 (S.D. Fla. June 16, 2017) ........................25

*El Chico, Inc. v. El Chico Café*,
   214 F.2d 721 (5th Cir. 1954) ............................................................................13

*Est. of P.D. Beckwith, Inc., v. Comm'r of Pats.*,
   252 U.S. 538 (1920) ...........................................................................................8

*FCOA LLC v. Foremost Title*,
   57 F.4th 939 (11th Cir. 2023) ...........................................................................11

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
   830 F.3d 1242 (11th Cir. 2016)........................................ 10, 11, 12, 13, 17, 18, 20

*Fortres Grand Corp. v. Warner Bros. Entm't. Inc.*,
   763 F.3d 696 (7th Cir. 2014) ............................................................................10

*Freedom Sav. & Loan Ass'n v. Way*,
   757 F.2d 1176 (11th Cir. 1985)..........................................................................20

*Frehling Enter., Inc. v. Int'l Select Group, Inc.*,
   192 F.3d 1330 (11th Cir. 1999) .........................................................10, 11, 19, 21

*Fulkerson v. The Muter Co.*,
   135 U.S.P.Q. 379 (T.T.A.B. Oct. 4, 1962) ..........................................................8

*Gift of Learning Found., Inc. v. TGC, Inc.*,
   329 F.3d 792 (11th Cir. 2003) ...........................................................................23

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
   921 F.3d 1343 (11th Cir. 2019)..................................................................... 15, 16

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..............................................................................6

*In re Ferrero*,
   479 F.2d 1395 (C.C.P.A. 1973) ...........................................................................9

*Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investacorp) E.C.*,
   931 F.2d 1519 (11th Cir. 1991)............................................................................7

*John H. Harland Co. v. Clarke Checks, Inc.*,
   711 F.2d 966 (11th Cir. 1983) ...........................................................................12

*La Dove, Inc. v. Playtex Jhirmack, Inc.*,
  No. 90-2794, 1991 WL 187473 (S.D. Fla. Mar. 4, 1991)......................................7

*Lever Bros. Co. v. Barcolene Co.*,
  463 F.2d 1107 (C.C.P.A. 1972) ..........................................................................9

*Lopez v. Adidas Am., Inc.*,
  No. 19-CV-7631, 2020 WL 2539116 (S.D.N.Y. May 19, 2020) .................. 17, 18

*MC3 Invs. LLC v. Local Brand, Inc.*,
  No. 5:22-CV-260, 2023 WL 2947437 (N.D. Fla. Mar. 13, 2023).......................18

*Murray v. Cable Nat. Broad. Co.*,
  86 F.3d 858 (9th Cir. 1996) .................................................................................6

*Nankivil v. Lockheed Martin Corp.*,
  No. 3:02-CV-512, 2003 WL 25568817 (M.D. Fla. Mar. 7, 2003) ........................6

*Playmakers, LLC v. ESPN, Inc.*,
  297 F. Supp. 2d 1277 (W.D. Wash. 2003) .................................................. 12, 17

*Pro. Sound Servs., Inc. v. Guzzi*,
  349 F. Supp. 2d 722 (S.D.N.Y. 2004) ..................................................................8

*Ross Bicycles, Inc. v. Cycles USA, Inc.*,
  765 F.2d 1502 (11th Cir. 1985)..........................................................................19

*Sandshaker Lounge & Package Store LLC v. RKR Bev. Inc*,
  No. 3:17-CV-686, 2018 WL 7351689 (N.D. Fla. Sept. 27, 2018).......................25

*Saratoga Vichy Springs Co., Inc. v. Lehman*,
  625 F.2d 1037 (2d Cir. 1980)...............................................................................8

*Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*,
  983 F.3d 1273 (11th Cir. 2020).........................................................................12

*Savtira Corp. v. Hillier*,
  No. 8:11-CV-00719, 2011 WL 2216794 (M.D. Fla. June 7, 2011).......................5

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
  600 F.3d 1334 (11th Cir. 2010).........................................................................15

*Sovereign Military Hospitaller Order of Saint John of Jerusalem v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem*,
  809 F.3d 1171 (11th Cir. 2015)...........................................................................12

*Sream, Inc. v. Lamrini Food & Disc. Bev., Inc.*,
  No. 16-CV-81656,
  2017 U.S. Dist. LEXIS 46810 (S.D. Fla. Mar. 28, 2017)....................................13

*Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*,
  651 F.2d 311 (5th Cir. 1981) ..............................................................................13

*Tana v. Dantanna's*,
  611 F.3d 767 (11th Cir. 2010) .....................................................................2, 22

*Tarsus Connect, LLC v. Cvent, Inc.*,
  452 F. Supp. 3d 1334 (N.D. Ga. 2020) .........................................................19, 20

*Taylor v. Trapeze Mgmt., LLC*,
  No. 0:17-CV-62262, 2018 WL 9708619 (S.D. Fla. Mar. 26, 2018) ....................24

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
  295 F.3d 623 (6th Cir. 2002) ..............................................................................22

*United Country Real Estate, LLC v. United Realty Group, Inc.*,
  No. 16-CV-60154, 2017 WL 4324634 (S.D. Fla. Sept. 29, 2017)........................21

*Valencia v. Universal City Studios LLC*,
  No. 1:14-CV-528, 2014 WL 7240526 (N.D. Ga. Dec. 18, 2014) ..........................8

*VVIG, Inc. v. Alvarez*,
  No. 18-CV-23109, 2019 WL 5063441 (S.D. Fla. Oct. 9, 2019)...........................25

*Weinacker v. Wahl Clipper Corp.*,
  No. 22-CV-314, 2023 WL 4983282 (S.D. Ala. Apr. 28, 2023).............................7

*Welding Servs., Inc. v. Forman*,
  509 F.3d 1351 (11th Cir. 2007).....................................................................7, 17

*Whertec, Inc. v. Salmon*,
  No. 3:20-CV-1254, 2021 WL 3555676 (M.D. Fla. Apr. 28, 2021) .....................24

*Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*,
  No. 2:04-CV-47, 2005 WL 1677256 (M.D. Fla. July 14, 2005) .....................6, 15

*Wreal, LLC v. Amazon.com, Inc.*,
    38 F.4th 114 (11th Cir. 2022) ........................................................... 10, 11, 14, 22

*Yellowfin Yachts, Inc. v. Barker Boatworks*, *LLC*,
    898 F.3d 1279 (11th Cir. 2018) ........................................................................ 9

**Statutes**

15 U.S.C. § 1125(a) ................................................................................................. 7

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................... 1, 6, 15, 25

6 McCarthy on Trademarks and Unfair Competition (5th ed.)
    § 32:121.75 ........................................................................................................ 6

R. Reg. Fla. Bar. Chapter 4 ................................................................................. 21

Defendant X Corp. respectfully submits this motion to dismiss the Complaint of Plaintiff X Social Medial LLC (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This case is a shakedown masquerading as trademark infringement and unfair competition claims. Plaintiff X Social Media LLC—an advertising agency for lawyers—is opportunistically seizing on the rebrand of Defendant's online communications platform from Twitter to X, claiming that it will cause confusion in the marketplace. Plaintiff's trademark registration for X SOCIALMEDIA does not confer upon it an exclusive monopoly to use X, one of only 26 letters in the alphabet.

On the contrary, Plaintiff has peacefully coexisted for years with hundreds of other registered X-formative trademarks (examples below[1]) for services ranging from advertising, marketing, social media, computer software, and more. Neither these third-party trademark owners nor Plaintiff own exclusive rights to use the letter X.



Plaintiff's allegations of "likely confusion"—the standard for trademark infringement—are implausible on their face. Of the seven factors that courts consider

---

[1] The USPTO Registration Certificates for the registered marks above are attached as Exhibits 4–15 to the Declaration of Christopher J. Lauzau (Dec. 4, 2023) [hereinafter, Lauzau Decl.] filed concurrently herewith.

in assessing a likelihood of confusion, none favor Plaintiff. *See Tana v. Dantanna's*, 611 F.3d 767, 774–75 (11th Cir. 2010) ((1) strength of the plaintiff's mark; (2) existence and extent of actual confusion in the consuming public; (3) similarity of the marks; (4) similarity between the services offered by the marks; (5) similarity of the actual sales methods used, such as the parties sales outlets and customer base; (6) similarity of advertising methods; and (7) intent of the alleged infringer to misappropriate the proprietor's good will).

Significantly, Plaintiff's X SOCIALMEDIA mark is weak, especially given the crowded field of X marks in which it operates, and is entitled to only thin protection. Plaintiff's literal mark and design is distinct from all of the third-party X marks, as well as Defendant's mark, and consumers can easily tell the difference. Plaintiff's use of the X SOCIALMEDIA design mark evokes the law-related services it provides, incorporating a blue human stick-figure holding up the scales of justice. In contrast, Defendant's mark, used in connection with different services, is a simple, yet distinctive, modern, black and white X.

**Plaintiff's Mark**       **Defendant's Mark**

 

Despite Plaintiff's claims that the media attention resulting from Defendant's rebrand has "caused reverse confusion and led consumers to believe that [Plaintiff]'s advertising services are being offered by or are associated with [Defendant]," Doc. 1 ¶ 22, the Complaint fails to identify even a single instance of consumer confusion.

2

That is not surprising given that the parties use different marks, alongside hundreds of other X marks, and offer different services, to different consumers, in different channels of trade, using different advertising.

The Complaint fails to allege a single likelihood of confusion factor that favors Plaintiff. Accordingly, the Complaint should be dismissed.

## STATEMENT OF FACTS

Plaintiff is an advertising agency that provides paid advertising services to law firms—a highly sophisticated clientele—to help connect them with putative class action plaintiffs via social media sites Facebook and Instagram. Doc. 1 ¶ 7; *see, e.g.*, Doc. 1-2 at 3–5. Plaintiff utilizes Facebook marketing tools and also publishes books—including "A Lawyer's Guide to Mass Torts" and "The Facebook Effect for Lawyers"—and a weekly newsletter that discusses litigation updates and other topics of legal significance. Doc. 1. ¶¶ 7, 9–10; Doc. 1-2 at 2–5; Doc. 1-3 at 2–4.

Plaintiff owns a single United States federal trademark registration for X SOCIALMEDIA, registered in Class 35, in connection with "advertising services," Doc. 1-4 at 2, and it uses the stylized X SOCIALMEDIA mark shown above. Plaintiff does not own any registered trademarks for the letter "X" standing alone.

Defendant's business is different from Plaintiff's: It provides an online and app-based platform that enables registered users to freely share information, photos, audio and video content. Doc 1-5 at 2. The platform, previously known as Twitter, was acquired by Elon Musk-owned holding companies in October 2022 and later rebranded to "X" in July 2023, Doc. 1 ¶ 8, in part because of the "sentimental value"

Mr. Musk associates with X, dating back to his previous involvement with X.com and PayPal in 2000, long before Plaintiff's first use. Doc. 1-6 at 7.

Defendant has filed seven applications to register the X mark with the United States Patent and Trademark Office ("USPTO") for its services. Doc. 1-5 at 2–15. Those applications are currently pending. As reflected in the applications, and contrary to the Complaint's allegations, none of the services covered by those applications cover "advertising services." *Id.*

Defendant's rebrand from Twitter to X earlier this year garnered significant media attention with articles published in "numerous national outlets such as The New York Times, BBC, Rolling Stone, The Washington Post, CNN, Bloomberg.com, Reuters, and The Wall Street Journal." Doc. 1 ¶ 19; *see, e.g.*, Doc. 1-6 at 4–6. Although the Complaint alleges that "national attention on the 'X' rebrand means [Defendant] is now known to most social media users and American consumers" and that the rebrand is likely to cause confusion, Plaintiff fails to allege a single instance of actual confusion since the rebrand in July. Doc. 1 ¶ 21.

The lack of any confusion is not surprising: Plaintiff has peacefully coexisted with hundreds of other X-formative marks, rendering Plaintiff's mark weak. Companies like Meta, Microsoft, Sony and Google all own registered "X" trademarks, *see* Lauzau Decl. Exs. 6, 11, 12, 15, and numerous others own marks with similarities to X SOCIALMEDIA, beyond the shared letter "X" (e.g., human-

4

shaped logos, advertising services, and composite marks with "social" and "X"), as reflected in the chart below.[2]

| Mark | Reg. No. | Sampling of Goods/Services |
|---|---|---|
| SocialXBusiness | 5,294,621 | Advertising agency services |
| X | 7,089,460 | Advertising, marketing and promotional services, namely, development of advertising campaigns for print media, web pages, the internet, and television |
| X | 4,728,275 | Entertainment services, namely, providing a web site featuring photographic, audio, video and prose presentations |
| X | 6,418,414 | Advertising services, namely, ad campaign serving, managing, trafficking and optimizing; advertising services, namely, tracking and reporting on ad performance and metrics |
| X | 6,424,881 | Advertising services; business marketing services; on-line advertising and marketing services; on-line customer-based social media brand marketing services |
| SOCIALX | 6,563,767 | Computer software platform allowing for interchange between users, robots and digital characters to interface and engage |

Plaintiff cites the results of "a Google search with the query 'x social media'" as proof that confusion is likely, but that contention is deceptive. When viewed in context, those search results do not plausibly support Plaintiff's assertions of likely confusion. Doc. 1 ¶ 29. Plaintiff has misleadingly edited the search results to show only the portion that identifies X Corp. as the owner of "X social media platform," *id.*, which, of course, is an accurate statement.  Plaintiff, though, neglects to disclose that the full search results yield Plaintiff's company as the top result, including its website, address, image and founder's image. Lauzau Decl., Ex. 2.[3]

---

[2] A district court may consider documents that are subject to judicial notice, such as matters of public record and registrations on file with the USPTO. *See, e.g., Savtira Corp. v. Hillier*, No. 8:11-CV-00719, 2011 WL 2216794, at *2 (M.D. Fla. June 7, 2011). A fuller sampling of X-formative marks registered with the USPTO specifically in International Class 35 is attached as Lauzau Decl., Ex. 1.

[3] Plaintiff's allegations are based on an extrinsic document explicitly cited and incorporated in the Complaint, and Defendant's inclusion of the broader search results is properly considered on this

## LEGAL STANDARD

To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Accordingly, "[a] bare bones pleading of legal conclusions for a count for trademark infringement, [and related causes of action] will not survive a Rule 12(b)(6) motion to dismiss." 6 McCarthy on Trademarks and Unfair Competition (5th ed.) § 32:121.75. Indeed, a "growing number of courts have dismissed a trademark infringement complaint on a Rule 12(b)(6) motion when the allegations of a likelihood of confusion are implausible in view of the facts alleged." *Id.* (collecting cases); *see, e.g.*, *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, No. 2:04-CV-47, 2005 WL 1677256, at *5 (M.D. Fla. July 14, 2005), *vacated and remanded on other grounds*, 199 F. App'x. 738 (11th Cir. 2006) (dismissing infringement claim because defendants were not selling similar products and there was a lack of actual confusion.); *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858 (9th Cir. 1996) (affirming 12(b)(6) dismissal where likelihood of confusion was not plausible between AMERICA SPEAKS and AMERICA'S TALKING); *Cintas Corp. v. Unite Here*, 355 F. App'x 508 (2d Cir. 2009) (affirming 12(b)(6) dismissal where plaintiff failed to

---

motion. *See Nankivil v. Lockheed Martin Corp.*, No. 3:02-CV-512, 2003 WL 25568817, at *4 (M.D. Fla. Mar. 7, 2003) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

allege plausible likelihood of confusion); *Weinacker v. Wahl Clipper Corp.*, No. 22-CV-314, 2023 WL 4983282 (S.D. Ala. Apr. 28, 2023), *R&R adopted*, 2023 WL 4982251 (S.D. Ala. Aug. 2, 2023) (dismissing infringement claim for failure to state a claim).

## ARGUMENT

I.   **The Complaint Fails to State a Claim for either Trademark Infringement or Unfair Competition**

To state a claim for federal trademark infringement (Count I), Plaintiff must allege: (i) that it owns a valid mark entitled to protection; and (ii) that Defendant's mark is likely to cause confusion. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007) (citing 15 U.S.C. § 1125(a)). Plaintiff's registered trademark for X SOCIALMEDIA does not give it rights in the letter X standing alone, and the Complaint fails to plausibly allege a likelihood of confusion. Plaintiff's failure to establish a likelihood of confusion also requires dismissal of its claims for infringement and unfair competition under Florida state common law (Counts II and IV). *See La Dove, Inc. v. Playtex Jhirmack, Inc.*, No. 90-2794, 1991 WL 187473, at *3 (S.D. Fla. Mar. 4, 1991) ("The tests for common law trademark infringement, unfair competition of this type and violations of 15 U.S.C. § 1125(a) are essentially the same."); *see also Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investacorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991).

A.   **Plaintiff's Trademark Rights Are in X SOCIALMEDIA, Not X**

Plaintiff claims that it has rights in an "X mark," and the Complaint heavily relies on the "X" portion of Plaintiff's mark. Doc. 1, at 3–5. However, Plaintiff's use

and registration of X SOCIALMEDIA confers no rights in the letter X standing alone. That is because a trademark registration protects a brand's commercial impression in the mark as a whole, not as to each of its component parts. *See Est. of P.D. Beckwith, Inc., v. Comm'r of Pats.*, 252 U.S. 538, 545–46 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail. For this reason, [a mark] should be considered in its entirety."); *see, e.g.*, *Saratoga Vichy Springs Co., Inc. v. Lehman*, 625 F.2d 1037, 1042 (2d Cir. 1980) (trademark registration in SARATOGA VICHY did not confer rights in SARATOGA standing alone); *Valencia v. Universal City Studios LLC*, No. 1:14-CV-528, 2014 WL 7240526, at *7 (N.D. Ga. Dec. 18, 2014) (trademark "rights in the composite name 'Honey Rockwell' do not confer rights in the single name 'Honey'").

The emphasis on a first letter of a trademark does not somehow create an identifying symbol separate and apart from the mark as a whole. *Fulkerson v. The Muter Co.*, 135 U.S.P.Q. 379 (T.T.A.B. Oct. 4, 1962) ("The capitalization of the first letter of a trademark is not an unusual means of presenting a trademark . . . . [I]t can't be said that the letter "J" [in JENSENS mark] created an image as an identifying symbol separate and apart from the entire mark."); *see also Pro. Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722, 731 (S.D.N.Y. 2004), *aff'd*, 159 F. App'x 270 (2d Cir. 2005) (plaintiff failed to show that its unregistered use of the letter "S" was capable of distinguishing its goods from that of others).

Plaintiff cannot rely on its registration in X SOCIALMEDIA to establish protectable trademark rights in the "X" component of its mark unless it plausibly can

allege that consumers have come to associate "X" with Plaintiff's services. The Complaint fails to do so. Thus, the entirety of Plaintiff's mark X SOCIALMEDIA must be compared with Defendant's use of X in assessing likelihood of confusion (as discussed below). *See, e.g., Colgate-Palmolive Co. v. Carter-Wallace, Inc.*, 432 F.2d 1400, 1402 (C.C.P.A. 1970) ("The difference in appearance and sound of the marks in issue [PEAK and PEAK PERIOD] is too obvious to render detailed discussion necessary. In their entireties they neither look nor sound alike."); *Lever Bros. Co. v. Barcolene Co.*, 463 F.2d 1107, 1108–1109 (C.C.P.A. 1972) ("While appellant points out some similarities between the word ALL as it is used by both parties [ALL and ALL CLEAR!], inspection of the two marks also shows some obvious differences. Considering appellee's mark *in its entirety,* we are convinced that there is no likelihood of confusion.) (emphasis in original); *In re Ferrero*, 479 F.2d 1395, 1397 (C.C.P.A. 1973) ("[T]he board has made too much of the indisputable fact that TIC TAC is two-thirds of TIC TAC TOE and that TIC TAC would 'bring to mind' TIC TAC TOE. Neither fact determines the issue of likelihood of confusion.").

B.   **The Complaint Fails to Plausibly Allege a Likelihood of Confusion**

The test for infringement is whether there is a likelihood of confusion; confusion must be probable, not just possible. *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1295 (11th Cir. 2018). Courts in this Circuit consider seven factors (*see supra* at p. 2) to determine whether there is a likelihood of confusion.

In a case of reverse-confusion, as Plaintiff has alleged here, the senior user (Plaintiff) is injured because the public assumes that it is somehow affiliated with the

junior user (Defendant), or that the senior user is actually the infringer. *Curity AB v. Chenmed, LLC*, No. 22-CV-22654, 2022 WL 18956198, at *3 (S.D. Fla. Dec. 7, 2022). Although there are some differences in how the traditional seven-factor test is applied in reverse-confusion cases, *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 121 (11th Cir. 2022), those differences are not material here and do not render Plaintiff's claims plausible. *See, e.g.*, *Fortres Grand Corp. v. Warner Bros. Entm't. Inc.*, 763 F.3d 696, 706 (7th Cir. 2014) (affirming 12(b)(6) dismissal of infringement claim where plaintiff failed to plausibly allege consumers would be confused into thinking that plaintiff's software was made by or connected to defendant's use of software in a movie).

"Of these [seven factors], the type of mark [i.e. strength] and the evidence of actual confusion are the most important." *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Significantly, the Eleventh Circuit "has long recognized that the extent of third-party use of a mark is an essential factor in determining a mark's strength." *See Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1257 (11th Cir. 2016) (citations omitted) [hereinafter "*Fla. Univ.*"].

As to these two "most important" factors, Plaintiff fails to allege that it owns a strong mark, and the Complaint contains no allegations of actual confusion. A simple comparison of the marks demonstrates they are not confusingly similar and an analysis of the remaining seven factors, based on the allegations of the Complaint, demonstrates that a likelihood of confusion is implausible.

10

1.    **Plaintiff's Trademark Protection Is Thin and Defendant Has Not Commercially Overwhelmed the Market**

The "strength" of a mark directly correlates with the level of protection to which it is entitled. *Frehling Enter.*, 192 F.3d at 1335. The stronger the mark, the greater the scope of protection it is afforded; the weaker the mark, the less trademark protection it receives. *Id.* "[W]hen assessing the [strength of the mark factor] in a reverse-confusion case, the district court should consider both the conceptual strength of the plaintiff's mark and the relative commercial strength of the defendant's mark." *Wreal, LLC*, 38 F.4th at 129. That is because, in a reverse-confusion case, the plaintiff is attempting to assert that "the defendant—the junior but more powerful mark user—has been able to commercially overwhelm the market and saturate the public conscience with its own use of the mark, thereby weakening and diminishing the value of the senior user's mark." *Id. at* 128–29.

A mark's strength is measured by its "conceptual" and "commercial" strength. *See FCOA LLC v. Foremost Title*, 57 F.4th 939, 948 (11th Cir. 2023). Conceptual strength refers to where a mark falls on the spectrum of distinctiveness. *See Fla. Univ.*, 830 F.3d at 1258. From weakest to strongest, a mark can be generic, descriptive, suggestive, or arbitrary. *Id.* at 1256. Generic marks are not protectable and

> refer to a class of which an individual product is a member [; d]escriptive marks describe a characteristic or quality of an article or service[; s]uggestive marks suggest characteristics of the goods and services and require imaginative effort by the consumer in order to be understood as descriptive [; and f]inally, arbitrary marks—the strongest of the four categories—bear no relationship to the product.

*Id.* at 1256-57. Commercial strength, on the other hand, refers to real-world consumer recognition of a mark. *Id.* at 1258. A "strong" mark is "rarely used by parties other than the owner of the trademark," while a "weak" mark is "often used by other parties." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973–74 (11th Cir. 1983) (quotation omitted).

### a.   **Plaintiff's Mark Is Conceptually Weak**

The Complaint alleges that Plaintiff's use of "X"—the first part of its mark—is "symbolic" and signifies the "beginning" of a journey towards justice by using "social media"—the second part of its mark. Doc. 1 ¶ 10. Based on Plaintiff's own allegations, its mark is descriptive, or at most suggestive, of its services, entitling it to thin trademark protection. Plaintiff cannot solely rely on the incontestable status of its trademark registration to establish strength because, although "an incontestable mark may be sufficiently strong for registration purposes . . . [it] may still be relatively weak for likelihood of confusion purposes." *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1281 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004).[4]

### b.   **Plaintiff's Mark Is Commercially Weak**

Plaintiff's mark operates in a crowded field of extensive third-party use and is commercially weak, which rebuts any presumption of strength that may arise from

---

[4] Although the Eleventh Circuit once held that an incontestable mark is deemed "relativity strong," *Dieter v. B & H Indus. of SW Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989), it has more recently recognized that its reasoning in *Dieter* was "incorrect." *Sovereign Military Hospitaller Order of Saint John of Jerusalem v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem*, 809 F.3d 1171, 1183 (11th Cir. 2015) (opining that *Dieter* is an outlier and "almost certainly incorrect"); *see also Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1280 (11th Cir. 2020) (noting that, though criticized and likely flawed, *Dieter* remains the law of the circuit, but its application could be avoided).

Plaintiff's trademark registration. *Fla. Univ.*, 830 F.3d at 1257. The Complaint ignores the presence of third-party X-formative marks that diminishes whatever minimal distinctiveness Plaintiff's mark has. *See id.* (lesser protection where 12 third-party uses of FLORIDA and UNIVERSITY in the same market); *see also El Chico, Inc. v. El Chico Café*, 214 F.2d 721, 725 (5th Cir.1954) (27 third-party uses of CHICO and similar names "for various products and articles" rendered EL CHICO weak); *Beaulieu Group LLC v. Mohawk Carpet Distrib.*, No. 4:15-CV-0124, 2017 WL 11634736, at *34 (N.D. Ga. Jan. 23, 2017) (15 third-party uses of EVER CLEAN in similar industries weakened strength of mark).

The Court can consider the *hundreds* of third-party X registrations on a motion to dismiss, *Sream, Inc. v. Lamrini Food & Disc. Bev., Inc.*, No. 16-CV-81656, 2017 U.S. Dist. LEXIS 46810, at *7 (S.D. Fla. Mar. 28, 2017) (ECF No. 30) and conclude that they render Plaintiff's mark weak, and confusion unlikely. *See Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 316 (5th Cir. 1981) (finding "extensive third-party use of the word '[s]un' impressive evidence that there would be no likelihood of confusion").

Plaintiff's allegation that it has spent large sums of money on advertising is insufficient to establish commercial strength of its mark. "[I]n isolation, evidence of promotion efforts is not sufficient to establish a mark's commercial strength because it tells us precious little about the efficacy of those efforts in creating marketplace recognition of [the] mark." *Fla. Univ.*, 830 F.3d at 1259. Although Plaintiff's

promotional efforts may have helped grow its business, Doc. 1 ¶ 14, the Complaint lacks any allegation that consumers recognize Plaintiff's mark in commerce.

     c.    **Defendant Has Not Swamped Plaintiff's Reputation, Nor Can Plaintiff Plausibly Allege That It Will**

In reverse-confusion cases, courts consider the relative commercial strength of the defendant's mark. *Wreal, LLC*, 38 F.4th at 129. To evaluate the commercial strength of the defendant's mark, a court can look for extensive advertising, public recognition, and, most notably if "the junior user was able to swamp the reputation of the senior user with a relatively much larger advertising campaign." *Id.*

Plaintiff alleges that Defendant has dominated the marketplace through its "clout, marketing resources and overall national notoriety." Doc. 1 ¶¶ 28–29. But the Complaint fails to provide a single factual allegation that Defendant has or even will be able to swamp the market with its use of X. Although Plaintiff alleges that a Google search for "x social media" yields results that accurately describe X Corp. as the owner of "X social media platform," Doc. 1 ¶ 29, Plaintiff presents only a piece of the results. In reality, a Google search for "x social media" yields Plaintiff as the top result, including a full profile of Plaintiff, with its founder, logo, website, news, LinkedIn, and ironically a hit for a *different* third-party company with the name of "XSocialNetworks." *See* Lauzau Decl., Ex. 2. It is implausible that Defendant's use of X has or will eclipse Plaintiff's use of X SOCIALMEDIA.

It also is implausible that Defendant's use of X could swamp and overrun a market already saturated with X-formative marks. Adopting Plaintiff's reliance on

14

Google, a search for Defendant's own "X" mark yields results beyond Defendant's use.[5] Lauzau Decl., Ex. 3. Results include a film, a band, a Google company, applications in the Google play store, and more, all using "X." *Id.* In fact, multiple X-formative marks have previously reached national recognition, like X for **X**box, **X**erox, **X**-Men, **X**finity, and more. *See* Lauzau Decl., Exs. 15–18. Not only has Defendant not "swamped the reputation" of Plaintiff, but using Plaintiff's logic, Defendant has not even flooded public recognition in its own X mark.

Because Plaintiff's mark is exceptionally weak and the Complaint contains no plausible factual allegation that Defendant has or will swamp Plaintiff's reputation, this factor weighs in favor of dismissal.

## 2.   **Plaintiff Has Not Plausibly Alleged Actual Confusion**

Plaintiff's conclusory allegations of actual confusion, without factual support, Doc. 1 ¶¶ 22, 37, cannot be credited. Courts in this Circuit have held that the absence of evidence of confusion is "significant," especially where, as here, there was enough opportunity for confusion to occur. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019). If "no actual confusion is detected . . . that can be [a] powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Id.* (quotation and citation omitted); *see also Whitney*, 2005 WL 1677256 at *5 (dismissing infringement claim in part because there was no actual confusion).

---

[5] "[A] district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

The Complaint alleges Twitter's rebrand to X received "national notoriety" and was a "harbinger of change for the renowned social network." Doc. 1 ¶¶ 19, 28; Doc. 1-6 at 2–7. Yet, Plaintiff fails to allege a single instance of actionable consumer confusion. Plaintiff's allegation that "media outlets covering Twitter's rebrand are using the 'X SocialMedia Mark' in its entirety in headlines while referencing X Corp." is not evidence of consumer confusion in the marketplace, which is the relevant question. Doc. 1 ¶ 22, Doc. 1-8 at 2–6; *see Homes & Land Affiliates, LLC, v. Homes & Loans Magazine, LLC,* 598 F. Supp. 2d 1248, 1264–65 (M.D. Fla. 2009) ("When examining the likelihood of confusion in the marketplace, a court examines only those in the relevant consumer group [*i.e.*, a potential customer], not the general public.").

Additionally, all but one of the headlines refer to "social media" in lower case letters, with a space between the words "social" and "media";[6] not a use of Plaintiff's registered trademark, which expressly disclaims any right to use "social media" apart from the mark as a whole. *See* Doc. 1-4 at 2 ("No claim is made to the exclusive right to use the following apart from the mark as shown: 'SOCIAL MEDIA'"). One headline even refers to X as a "social media platform," not an advertising service like Plaintiff. *See* Doc. 1-8 at 3 ("Musk's X social media platform shuts down promoted accounts ad business – Axios"). These non-trademark uses of the term "social media" are not "likely to cause confusion as to the source of the goods." *Hard Candy*, 921

---

[6] The headlines include: "X social media's India, South Asia policy head Gupta resigns, sources say;" "France's AFP sues Musk's X social media, cites refusal to discuss payment for news." Doc. 1-8 at 2, 6.

F.3d at 1362. Accordingly, because Plaintiff has failed to allege any instances of actual consumer confusion this factor weighs in favor of dismissal.

### 3. The Complaint's Allegations of Similarity Are Implausible

In assessing similarity, courts examine "the appearance, sound and meaning of the marks, as well as the manner in which the marks are used." *See Fla. Univ.*, 830 F.3d at 1260 (citations omitted). "Overwhelming visual dissimilarity can defeat an infringement claim, even where the other six factors all weigh in favor of the plaintiff." *Welding Servs.*, 509 F.3d at 1361 (dissimilarities between stylized marks outweighed undisputed similarity of services, sales methods, advertising methods, and evidence of potential confusion).

Plaintiff not only fails to mention any of the distinct visual characteristics of the parties' marks, but the Complaint fails to allege how both marks are used in commerce, which is fatal to its claims. *See Playmakers, LLC*, 297 F. Supp. 2d at 1283 ("[W]hat is critical is the overall appearance of the mark *as used in the marketplace*, not a deconstructionist view of the different components of the marks.") (emphasis added); *D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1329 (S.D. Fla. 2020) (granting motion to dismiss where plaintiff failed to provide "information as to how, exactly, the Defendants have used the infringing marks in commerce"); *see also Lopez v. Adidas Am., Inc.*, No. 19-CV-7631, 2020 WL 2539116, at *9 (S.D.N.Y. May 19, 2020) (acknowledging "precedent for dismissing a trademark infringement claim at the motion to dismiss stage based on [the similarity of marks]") (citations omitted).

The exhibits attached to the Complaint, however, show that the parties' marks as used in commerce are entirely different in appearance. Plaintiff's mark is typically displayed in color, with its highly stylized use of "X" as a human stick-figure holding the scales of justice. Defendant's use of "X" is simple, without color, in a consistent font with a double line on half of the "X." *Compare* Doc. 1-2 at 2, *with* Doc. 1-6 at 5.

That both parties' marks include the letter X is of no consequence because "the mere fact that two marks contain the same word does not, in itself, make the marks 'substantially similar.'" *MC3 Invs. LLC v. Local Brand, Inc.*, No. 5:22-CV-260, 2023 WL 2947437, at *7 (N.D. Fla. Mar. 13, 2023); *see also Lopez*, 2020 WL 2539116, at *9 ("[C]ourts have dismissed trademark infringement claims where the only similarity was a common word or phrase."). Moreover, if, as here, "a trademark operates in a crowded field of similar marks on similar goods or services, slight differences in names may be meaningful because consumers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other." *Fla. Univ.*, 830 F.3d at 1260 (quotation marks omitted).

Given the significant differences between the parties' marks in the crowded field of other X marks, there is no plausible allegation that the marks are similar. *See, e.g.*, *Brain Pharma, LLC v. Woodbolt Dist., LLC,* No. 12-CV-60141, 2012 WL 12838277, at *4 (S.D. Fla. May 1, 2012) (finding A-HD and SUPER HD for nutritional supplements were not similar where "HD" was a common industry term and there were "numerous differences in the total effect the marks create").

### 4.   The Parties Offer Different Services and Products

The Complaint's conclusory allegations that the parties offer similar services because Defendant has a pending trademark application in Plaintiff's registered class and because Defendant offers "advertising services," Doc. 1 ¶¶ 8, 20, are insufficient.

As an initial matter, Plaintiff's characterization of Defendant's trademark applications is false—none cover "advertising services." *See* Doc. 1-5 at 2. Putting the misstatement aside, the relevant question is "whether the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *Frehling Enter., Inc.*, 192 F.3d at 1338. Even where two parties sell the same product, slight variations render confusion less likely. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985) (although both parties sold bicycles, differences in their construction weighed against a likelihood of confusion). And, even where two parties offer overlapping services, confusion is less likely if the parties' primary service offering is different and in different industries. *Tarsus Connect, LLC v. Cvent, Inc.*, 452 F. Supp. 3d 1334, 1353-54 (N.D. Ga. 2020) (factor weighed against confusion where the parties' primary service offering was different even though both offered service for meetings, conferences and supplier advertising).

Plaintiff provides legal advertising services—a paid service to assist lawyers in aggregating plaintiffs for class action lawsuits. Doc. 1 ¶¶ 7, 9. Plaintiff places ads primarily on Facebook to "educat[e] victims of torts and connect[] them with advocates committed to turning the tide on societal harms." *Id.* ¶ 9.

19

By contrast, Defendant offers a free social networking platform for the general public that creates a "community for registered users to share information, photos, audio and video content" and authenticates "e-commerce transactions." Doc. 1-5 at 4. Although Defendant may publish advertisements on its platform, it provides the medium where those ads appear, and any services Defendant provides in connection with advertising are merely incidental to its primary service offering; indeed, Defendant partners with and recommends specific third-party companies to provide advertising services that Defendant does not ordinarily offer. Doc. 1-7 at 2–3. Given the differences in the parties' primary services, this factor weighs in favor of dismissal.

5. **The Complaint Lacks Allegations Regarding the Parties' Sales Outlets and Customer Bases**

The sales factor looks at "where, how, and to whom the parties' products are sold." *Fla. Univ.*, 830 F.3d at 1261 (citations omitted). "Dissimilarities between the manner of sale and the typical customers of the parties' services lessen the possibility of confusion." *Id.* When a party's target consumer is a sophisticated buyer, the likelihood of confusion is also diminished. *See Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1185 (11th Cir. 1985); *see also Tarsus Connect*, 452 F. Supp. 3d at 1354 (finding sophistication of customers lowered the likelihood of confusion).

The Complaint does not identify any overlapping similarities in the parties' respective sales methods and accordingly has not plausibly alleged that the parties operate in the same outlets for the same customer base. Plaintiff's target consumer appears to be lawyers, "businesses and law firms" that seek assistance—for a paid

20

fee—in advertising for mass tort cases. Doc. 1 ¶ 13. This target consumer is generally sophisticated, especially because legal marketing is a regulated field. *See United Country Real Estate, LLC v. United Realty Group, Inc.*, No. 16-CV-60154, 2017 WL 4324634, at *7 (S.D. Fla. Sept. 29, 2017) ("educated, licensed professionals" are generally sophisticated); R. Reg. Fla. Bar. 4-7.11 through 4-7.22 (governing legal marketing and attorney advertising).

The Complaint is similarly silent as to Defendant's target consumer or sales. But what is clear is that Defendant offers a *free* online platform for the general public. And even where Defendant provides paid opportunities for ad placements on its platform, Defendant also generally deals with a sophisticated consumer: ad-agencies and multinational corporations. Doc. 1-7 at 2–3. In short, the Complaint not only fails to allege overlapping sales and target consumers—its exhibits demonstrate that there is no overlap. This factor too weighs in favor of dismissal.

### 6. The Complaint Lacks Allegations Regarding an Overlap in Advertising

The similarity of advertising "factor looks to each party's method of advertising." *Frehling*, 192 F.3d at 1339. "[T]he standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." *Id.* at 1340.

The Complaint alleges that Plaintiff advertises through its website, books, magazines, and participation in tradeshows and conferences, Doc. 1 ¶ 13, but includes no allegations about how the parties' advertising is similar. Where, as here,

"the only similarity in the advertising channels used by the two parties is their maintenance of websites on the World Wide Web[, t]his similarity would dispel rather than cause confusion, however, because the websites are separate and distinct, suggesting two completely unrelated business entities." *Tana*, 611 F.3d at 778; *see also Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 637 (6th Cir. 2002) (noting that information about the parties' goods on the internet does not lead to the conclusion that they use the same marketing channels). Plaintiff has not alleged any facts that could plausibly lead to the conclusion that there is any overlap between the advertising for Plaintiff's legal advertising and Defendant's social media platform.

### 7. The Complaint Contains No Factual Allegations That Defendant Disregarded a Risk of Reverse Confusion

Ordinarily, the intent factor hinges on whether the junior user adopted its mark in good faith. However, the Eleventh Circuit (and others) addresses this factor differently in reverse confusion cases, noting that "intent could be shown through evidence that a defendant deliberately intended to push the plaintiff out of the market by flooding the market with advertising to create reverse confusion." *Wreal, LLC*, 38 F.4th at 136 (citations omitted).

The only allegations in the Complaint about Defendant's intent—based on information and belief—are conclusory. Plaintiff speculates that Defendant must have acted willfully because it should have known about Plaintiff and therefore must have disregarded a risk of reverse confusion. Doc. 1 ¶¶ 24–25. It is clear, though,

from the foregoing analysis, that there is no risk of reverse confusion here and that Defendant has not "flood[ed] the market." *See supra* § I(B)(1-7).

There can be no intent to drive Plaintiff out of the market, or culpably disregard a risk of reverse confusion, where hundreds of X-formative marks have peacefully coexisted without confusion. Instead, given Mr. Musk's long-history and "sentimental value" associated with the letter X dating back two decades to his days at PayPal, the more plausible inference is that Mr. Musk adopted the X mark for his latest entrepreneurial venture for reasons unrelated to Plaintiff. *See* Doc. 1-6. Plaintiff's conclusory allegations of intent are simply implausible.

\*   \*   \*

Plaintiff has not plausibly alleged that Defendant's different X mark used in connection with different services, for different consumers, in different channels of trade, with different advertising, could give rise to a likelihood of confusion—especially given the hundreds of third-party X-formative marks. Accordingly, Counts I, II, and IV of the Complaint should be dismissed.

## II.   The FDUTPA Claim Fails as a Matter of Law

Plaintiff's FDUTPA claim (Count III) fails for the same reason its infringement claim fails. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003) ("the analysis of the Florida statutory . . . law claims of . . . unfair competition is the same as under the federal trademark infringement claim")

(citation omitted). It also independently fails because Plaintiff has not alleged the essential element of consumer injury, requiring dismissal of the FDUTPA claim.[7]

The FDUPTA is a consumer protection statute, and an essential element is a consumer injury. *See e.g., CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*, No. 3:16-CV-186, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (Florida Court of Appeals "unequivocally instructs that a plaintiff must prove that there was injury or detriment to consumers in order to satisfy all the elements of a FDUTPA claim" (citing *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015))); *see also Whertec, Inc. v. Salmon*, No. 3:20-CV-1254, 2021 WL 3555676, at *6 (M.D. Fla. Apr. 28, 2021) (dismissing FDUTPA claim as a matter of law because it failed to allege a consumer injury, reasoning that even if non-consumers were permitted to bring a FDUTPA claim, "[t]he Florida legislature . . . retained the requirement that there must be a consumer injury").

To state a claim a plaintiff must allege facts plausibly suggesting that the defendant's actions were likely to cause consumer harm, *i.e.* a deceptive act or unfair practice. *See CMR Const. & Roofing, LLC*, 2022 WL 3012298, at *4 ("A deceptive act

---

[7] Florida courts have recognized two different issues with respect to properly alleging any FDUTPA claim—is the plaintiff a consumer and has plaintiff alleged a consumer injury? Because the complaint fails on the later point, Defendant need not address the additional deficiency that plaintiff is not a consumer. Defendant believes the complaint is dismissible on that basis as well, *see, e.g., Taylor v. Trapeze Mgmt., LLC*, No. 0:17-CV-62262, 2018 WL 9708619 (S.D. Fla. Mar. 26, 2018), at *7; *Bilotta v. Citizens Info. Assocs., LLC*, No. 8:13-CV-2811, 2013 WL 12155486, at *3 (M.D. Fla. Dec. 20, 2013) (collecting cases and holding that a plaintiff must be a consumer to bring FDUTPA claim based on "the statute's legislative history" . . . that FDUTPA is meant to protect consumers"); but notes that the Florida Supreme Court has not yet resolved the question. *CMR Const. & Roofing, LLC v. UCMS, LLC*, No. 21-CV-11183, 2022 WL 3012298, at *3, n.2 (11th Cir. July 29, 2022) (recognizing that "district courts in this circuit have interpreted [FDUTPA] inconsistently," but concluding only consumer injury is required "in the absence of a decision by the Florida Supreme Court").

involves 'a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'") (citations omitted); *Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, No. 2:18-CV-408, 2019 WL 277733, at *11 (M.D. Fla. Jan. 22, 2019) (dismissing claims where plaintiff failed to allege "deceptive acts" against a consumer above a "speculative level."). The Complaint alleges that there has been "irreparable damage and injury *to Plaintiff*" (emphasis added), not consumers. Doc. 1 ¶ 52. And, although the Complaint contends that consumers are "confused," it provides no factual allegations in support. Doc. 1 ¶¶ 36–37, 51. Generic allegations of likelihood of confusion or other deceptive and unfair trade practices are insufficient to allege a consumer injury. *See Sandshaker Lounge & Package Store LLC v. RKR Bev. Inc*, No. 3:17-CV-686, 2018 WL 7351689, at *5 (N.D. Fla. Sept. 27, 2018); *see also VVIG, Inc. v. Alvarez*, No. 18-CV-23109, 2019 WL 5063441, at *12 (S.D. Fla. Oct. 9, 2019) (dismissing FDUTPA where plaintiffs "do not identify themselves as consumers or identify any other consumers harmed by the same"). Because Plaintiff has failed to allege a consumer injury, the FDUTPA claim should be dismissed.

## CONCLUSION

For the forgoing reasons, Plaintiff's Complaint should be dismissed with prejudice[8] pursuant to Rule 12(b)(6) for failure to state a claim.

---

[8] Although leave to amend is construed liberally, a complaint should be dismissed with prejudice where leave to amend would be futile. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005); *see also Domond v. Peoplenetwork APS*, No. 16-CV-24026, 2017 WL 5642450 (S.D. Fla. June 16, 2017), *aff'd*, 748 F. App'x 261 (11th Cir. 2018) (dismissing plaintiff's trademark claims with prejudice where leave to amend was futile).

## LOCAL RULE 3.01(g) CERTIFICATION

On December 1, 2023, counsel for Defendant conferred with counsel for

Plaintiff via telephone regarding the resolution of this motion, and Plaintiff opposes.

*/s/ Megan K. Bannigan*
Megan K. Bannigan (Lead Counsel)*
David H. Bernstein*
Jared I. Kagan*
Nicole M. Flores*
Debevoise & Plimpton LLP
66 Hudson Blvd
New York, NY 10001
Telephone: (212) 909-6000
mkbannigan@debevoise.com
dhbernstein@debevoise.com
jikagan@debevoise.com
nmflores@debevoise.com

Dustin Mauser-Claassen
Florida Bar No. 0119289
Quinn B. Ritter
Florida Bar No. 1018135
KING, BLACKWELL, ZEHNDER
  & WERMUTH, P.A.
25 E. Pine St.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
dmauser@kbzwlaw.com
qritter@kbzwlaw.com

*Admitted pro hac vice*

*Counsel for Defendant, X. Corp.*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that, on December 4, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>*/s/ Dustin Mauser-Claassen*</u>
Dustin Mauser-Claassen
Florida Bar No.: 0119289

*Counsel for Defendant X Corp.*
