UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| X SOCIAL MEDIA LLC,<br><br>                   Plaintiff,<br><br>v.<br><br>X CORP.<br><br>                   Defendant. | Case No. 6:23-CV-01903-JA-EJK<br><br><br>**COMPLAINT** |

## PLAINTIFF'S OPPOSITION TO DEFENDANT X CORP.'S MOTION TO DISMISS

### PRELIMINARY STATEMENT

Why too often in legal writing are dissents written *vigorously*, objections made *strenuously*, and exceptions *carved out*?[1] A perceptive reader presented with Defendant's motion might also ask—why are lawsuits filed against powerful companies too often termed *shakedowns*?  Despite Defendant's choice of cliché, this case is not about unethical extortion.  Instead, it rightfully invokes the protection of the Lanham Act which targets consumer confusion and guards the goodwill and labors of senior trademark holders in the marketplace.

Therefore, Defendant's Motion to Dismiss presents the Court with a familiar two-part test for determining whether claims brought under the Lanham Act are

---

[1] See Bryan A. Garner, Garner's Dictionary on Legal Usage, p.164, 3d ed. Oxford 2011.

1

sufficiently pleaded. To state a claim for trademark infringement, a plaintiff must plead facts demonstrating that 1) its marks were entitled to protection and 2) the defendant used marks that were identical or so similar that they were likely to cause consumer confusion. *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 126 (11th Cir. 2022). This legal standard is applied to trademark infringement and unfair competition claims under the Lanham Act, as well as to similar state and common law causes of action. *Bluewater Key RV Ownership Park Prop. Owners Ass'n Inc. v. Clark* No. 15-10060-CIV, 2016 WL 4761853, at *5 (S.D. Fla. Sept. 12, 2016) (citing *Tally Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1025-26 (11th Cir. 1989); *Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369, 1376 (M.D. Fla. 2008); *Greenberg Assocs., Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004).

Although the application of the two-part test is relatively straightforward, Defendant misconstrues the legal standard and, instead, invites the Court to prematurely engage in a full likelihood of confusion analysis prior to making a determination of whether Plaintiff has alleged a plausible claim. But the plaintiff does not need to prove infringement at this stage. "Whether the plaintiff has carried its burden on the 'likelihood of confusion' element and whether the products are sufficiently 'related,' is irrelevant at this stage and it is premature to analyze whether it has done so." *ICON Health & Fitness, Inc. v. IFITNESS, Inc.*,

No. 12-20125-CIV, 2012 WL 1120925, at *4 (S.D. Fla. Apr. 3, 2012).  At this stage, the plaintiff has to plead each element of a trademark infringement claim and support each element with plausible facts. X Social Media's Complaint accomplishes that task.

## STANDARD OF REVIEW

"On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint." *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1035–36 (M.D. Fla. 2019), citing *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

Although the complaint must include plausible factual allegations concerning all elements of the claim, "the pleading standard Rule 8 announces that it does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 5555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

When considering a motion to dismiss, all facts set forth in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the

pleadings and exhibits attached thereto." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir.1993).

"Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Bluewater Key RV Ownership Park Prop. Owners Ass'n Inc*, 2016 WL 4761853, at *3 (quoting *Conley v. Gibson*, 355 U.S. 45-46 (1957). *See also Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004).

## ARGUMENT

**I. X Social Media has pleaded each element of a trademark infringement claim and supported each element with plausible facts.**

To state a claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, the plaintiff must allege that 1) its marks were entitled to protection and 2) the defendant used marks that were identical or so similar that they were likely to cause consumer confusion. *Wreal, LLC*, 38 F.4th at 126; *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007); *Optimum Tech. Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir.2007). *See also ICON Health & Fitness, Inc.*, 2012 WL 1120925, at *3 ("At this stage, IFITNESS has sufficient notice of what this suit is about: ICON owns the IFIT trademarks, ICON alleges the Defendant has knowingly used these trademarks on its products, and that this use is likely to confuse consumers. Any further information the Defendant needs…can be acquired during discovery.").

4

As demonstrated below, X Social Media has satisfied the pleading requirements of Fed. R. Civ. P. 8 by alleging in its Complaint that it owns a valid trademark entitled to protection, and that Defendant's unauthorized use of a similar trademark in interstate commerce is likely to confuse or deceive consumers.

**A. Plaintiff is the owner of an incontestable registered trademark that is entitled to protection and, thus, enjoys a conclusive presumption that the registered mark is inherently distinctive.**

Under 15 U.S.C. § 1065, a registrant with an incontestable mark is entitled to "a conclusive presumption that its registered trademark is inherently distinctive" when used on or in connection with the goods and services specified on the registration certificate.

First, a trademark registration on the Principal Register is entitled to a legal presumption of validity. *See* 15 U.S.C. § 1115(a) (registration of mark on Principal Register "shall be prima facie evidence of the validity of the registered mark . . . and of the registrant's right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate"). Section 1115(a) entitles the plaintiff to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive. Furthermore, when a registrant files an affidavit under 15 U.S.C. § 1605, it is entitled "to a presumption that its registered trademark is inherently distinctive."

5

Five years after registering a mark, the holder may file the affidavit required by § 1065 and have its mark declared "incontestable." Once a mark has become "incontestable", its validity is presumed due to five or more years of continuous use in commerce in connection with the specified goods or services, subject to certain enumerated defenses which are not applicable in this action. 15 U.S.C. § 1065. *Dieter v. B & H Indus. of Sw. Fla., Inc*., 880 F.2d 322, 328 (11th Cir. 1989). Here, X Social Media filed an affidavit under 15 U.S.C. § 1065 that rendered the registration status of the mark incontestable, and it has used the mark continuously for over five years. Doc 1, ¶¶ 7, 9-10, 15, 32, 55.

Despite the presumption of strength given to incontestable marks, Defendant argues that Plaintiff's mark is descriptive for its services and weak. Doc 29. P. 12. Plaintiff disclaimed the "SOCIALMEDIA" descriptive portion of its mark, which logically places the focus on the term "X". It is established in this circuit that the incontestable status of a trademark is a factor to be considered in a likelihood of confusion analysis, even when part of the trademark is deemed descriptive by the PTO. "Indeed, under Eleventh Circuit precedent, a trademark's incontestable status is taken into account in the likelihood-of-confusion analysis. See *Dieter*, 880 F.2d at 329." *Homes & Land Affiliates, LLC v. Homes & Loans Mag., LLC*, 598 F. Supp. 2d 1248, 1260–61 (M.D. Fla. 2009). Even in the case of a descriptive mark, "[a]n incontestable mark is presumed to be at least descriptive with secondary

6

meaning and thus a relatively strong mark." *Id*. 598 F. Supp. 2d at 1260–61. "Incontestable descriptive marks are also presumed, in our circuit, to be 'relatively strong marks'." *FCOA LLC v. Foremost Title & Escrow Servs. LLC,* 57 F.4th 939, 949–50 (11th Cir.), cert. denied, 144 S. Ct. 103 (2023). This *Dieter* presumption can be rebutted by looking to commercial strength. Commercial strength, however, is a fact-driven analysis that considers consumer recognition evidence such as advertising expenditures, sales number of consumers served, industry recognition, third-party use, and surveys. This type of evidence can be fully developed during discovery. Thus, the incontestable status of Plaintiff's trademark provides significant weight to Plaintiff's argument that its trademark is strong. Doc 1. ¶¶ 12-15.

As for the dominance and consumer recognition of the term "X" in association with its services, it is common for trademark holders and consumers to focus on a particular portion or term, especially when a portion of the mark at issue uses a descriptive term such as "social media." Plaintiff owns a standard character registration for its mark X SOCIALMEDIA, and as such, it is not limited to a particular font or design in its presentation of the mark. It was, however, required to disclaim "social media" as a descriptive term, so it is appropriate to consider this

marketplace reality and to consider the overall commercial impression upon consumers encountering the mark.[2]

Defendant has argued the term "X" in Plaintiff's registered mark should not be considered part of the overall protectable mark entitled to the presumption of strength afforded an incontestable mark.  While the marks must be considered as a whole, the focus when comparing appearance and sound is on the non-generic or the non-descriptive portion of the marks.  For example, in *Alfa Corp*, the court considered the similarity of the parties' marks after concluding that the appropriate focus was on "Alfa" vs "Alpha" since both marks were followed by descriptive terms; "Alfa Insurance" and "Alpha Warranty Services" respectively.  *Alfa Corp. v. Alpha Warranty Servs., Inc.,* No. 2:20CV553-MHT, 2023 WL 6276338, at *8 (M.D. Ala. Sept. 26, 2023).  Similarly, when comparing "X Social Media" and "X", the descriptive nature of the term "social media" leads to a logical focus on the dominant term "X".  "As a rule, "[i]t is appropriate in determining the question of likelihood of confusion to give greater weight to the important or 'dominant' parts of a composite mark, for it is that which may make the greatest impression on the ordinary buyer."  McCarthy on Trademarks and Unfair Competition § 23:42

---

[2] Furthermore, at times, Plaintiff uses the "X" without the term "social media" in association with its services. Examples of its use of "X" standing alone or used with another descriptive term, such as "blog", are found in advertisements of its services and in association with its blog and newsletters. Doc. 1 ¶¶ 10-11; Exhibit B, Doc 1-3.

(5th ed. 2023). ("[A]ll courts agree that it is proper to give more weight to the 'dominant' part of a mark in the likelihood of confusion analysis.") *Alfa Corp.*, 2023 WL 6276338, at *6.

In sum, the term "X" is the dominant term in its incontestable registered mark, and the term on which consumers (including prospective business consumers of services) are likely to focus their attention; therefore, Plaintiff has met the first part of the test by alleging it owns a valid mark.  Similarity of the marks is discussed further below, as the test now turns to whether Plaintiff has alleged that a likelihood of confusion is plausible.

### B. X Social Media's Complaint sufficiently alleges that there is a likelihood of confusion arising from Defendant's use of the mark X.

Plaintiff is not required to prove likelihood of confusion at this stage.  The second part of the test only requires factual allegations establishing Defendant is using a similar mark without Plaintiff's consent and that consumer confusion is plausible.  A likelihood of confusion analysis is fact-intensive and appropriate after the discovery process has further developed the evidence.  The majority of the federal circuits hold that the likelihood of consumer confusion is an issue of fact, not law, that is to be decided by the final fact-finder after the discovery process has developed the evidence.  *Coach House Rest. Inc. v. Coach and Six Rest., Inc.*, 934 F.2d 1551, 1560–63, 1565 (11th Cir.1991) ("[W]e have already seen that the

9

confusion issue presents genuine issues of material fact.");[3] *see also Beachfront Realty, Inc. v. Beachfront Int'l Realty, LLC*, No. 13-CV-21265, 2013 WL 12095166, at *2 (S.D. Fla. Dec. 13, 2013) ("At the motion to dismiss stage … Plaintiff's allegations that Defendant used a similar mark and that Defendants are in the same business as Plaintiff, such that Defendants mark is likely to cause confusion among consumers…are sufficient to state a plausible claim for trademark infringement.)

***Similarity of marks and plausible likelihood of confusion***

Here, the factual allegations of similarity between the marks "X" and "X SocialMedia", which includes the dominant term "X", support Plaintiff's infringement claim.  Doc. 1 ¶¶ 10-11, 15; Exhibit B, Doc 1-3.  "Similarity in any of these elements—appearance, sound, connotation, and commercial impression—may be sufficient to find the marks similar." *Wreal, LLC*, 38 F.4th at 130 (quoting, *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985);  (*Stone Lion Cap. Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1321 (Fed. Cir. 2014)).

In *Wreal*, the Court evaluated the similarity between the marks "FyreTV" and "fireTV" finding them nearly identical.  The Court reasoned that, "Fire is the

---

[3] *See also Vulcan Golf, LLC v. Google Inc.,* 552 F.Supp.2d 752, 769 (N.D. Ill. 2008) ("likelihood of confusion is a fact-specific inquiry best left for decision after discovery").

first and only dominant word in both marks, and it is presented in a phonetically and connotatively identical fashion. It is also an abstract term, and thus the only term in either mark that gives the mark meaning." The Court further stated that "[b]y contrast, the secondary word in the marks—"TV"—is merely descriptive of or generic for the goods and services sold—i.e., streaming services. Moreover, the marks need not be identical, as the 'purpose in considering the similarity of marks as an indicator of likelihood of confusion is that the closer the marks are, the more likely reasonable consumers will mistake the source of the product that each mark represents.'" *Wreal, LLC*, 38 F.4th at 130–31. As in *Wreal*, the marks "X SocialMedia" and "X" are very similar because the dominant term giving the marks meaning is the "X". Thus, Defendant's use of an "X" mark is more likely to cause confusion as to the source of the services, as Plaintiff has alleged.[4]

### *Similarity of services and plausible likelihood of confusion*

X Social Media has also alleged that Defendant offers identical and similar services. For instance, one of Defendant's pending applications includes services

---

[4] *See also Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1372 (Fed. Cir. 2005) (finding similarity between "VEUVE ROYALE" and "VEUVE CLICQUOT" because "VEUVE ... remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876 (Fed Cir. 1992a) (finding similarity between "CENTURY 21" and "CENTURY LIFE OF AMERICA" in part because "consumers must first notice th[e] identical lead word"); *see also In re Detroit Athletic Co.*, 903 F.3d 1297, 1303 (Fed. Cir. 2018) (finding "the identity of the marks' two initial words is particularly significant because consumers typically notice those words first").

in Class 35 (advertising and business services).  Doc 1. ¶¶ 17, 20-21.  Specifically, Defendant lists "*Business data analysis; promotional services; business consulting and information services; business, consumer, and market research.*"  Doc 1. ¶ 27.  Each of these services is offered by X Social Media in association with its X mark registered in class 35 for advertising services.  Doc 1. ¶¶ 15, 27-28.  In addition, Defendant has stated that its new "X" mark is for use with its "everything app", which will connect targeted audiences with businesses and financial service providers using data analysis and market research. Doc 1. ¶¶ 20-21.  These services overlap with X Social Media's services, which also utilize data analysis, market research and advertising services to connect targeted audiences with relevant businesses.  Doc 1. ¶¶ 10-14.

Under the standard of review in a motion to dismiss, the Complaint's factual allegations that the parties' services are related and likely to cause consumer confusion should be accepted as true.  The similarity between the marks makes such factual allegations plausible enough to support the Plaintiff's trademark infringement claim.

***Actual confusion resulting from Defendant's rebrand***

Although actual confusion is not required to support a trademark infringement claim, the Complaint does contain factual allegations supporting actual confusion among prospective consumers of X Social Media services.

Prospective consumers of X Social Media may be businesses that also seek the data analysis and promotional type services offered by Defendant.  X Social Media has alleged reverse confusion is occurring because the media coverage aftermath of Defendant's rebrand has left consumers with the impression that X Social Media's services are being offered by or are affiliated with X Corp. Doc. 1. ¶¶ 21-22, 28-30.  In a reverse-confusion case, the plaintiff is not arguing that the defendant is attempting to profit off the plaintiff's goodwill.  Rather, the theory is that the junior but more powerful mark user has been able to saturate the public conscience with its own use of the mark, resulting in the diminished value of the senior user's mark.  See *Wreal, LLC*, 38 F.4th at 128-29.  X Social Media's Complaint included a Wikipedia Google search, which was intended to show that if a prospective consumer queried "who owned X SocialMedia," a search result would include an entry by a Wikipedia user, a prospective consumer, directing information about X Corp instead of X Social Media.  Doc. 1. ¶ 29.  This is an example of actual confusion and reverse confusion in the marketplace arising from X Corp's rebrand and use of the mark "X".   Correlating drops in revenue for X Social Media services at the time of the X Corp rebrand launch were also alleged in the Complaint and support an inference of actual confusion resulting from reverse confusion.  Doc 1. ¶ 23.

Examples of actual confusion need not be numerous to support a finding of likelihood of confusion as "the quantum of evidence needed to show actual confusion is relatively small." *PODS Enterprises, LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1274–75 (M.D. Fla. 2015) (quoting *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir.2010). "Binding precedent in this Circuit recognizes that a single, isolated instance of actual confusion, or two instances of actual confusion, can be sufficient evidence to support a finding of likelihood of confusion." *Id.*[5] X SocialMedia's allegations of actual confusion are plausible and entitle it to further develop evidence of actual confusion during discovery.

Defendant's Motion to Dismiss X Social Media's trademark infringement claims and unfair competition claims should be denied, because the Complaint alleges that Plaintiff owns a valid mark, and it is plausible that Defendant's unauthorized use of a similar mark for similar and identical services is likely to cause confusion.

## II. Defendant's third-party registration evidence should not be considered in this motion to dismiss proceeding.

Without valid evidentiary support, Defendant argues that "Plaintiff's mark operates in a crowded field of extensive third-party use." Doc. 12. ¶ 12.  In support

---

[5](citing *John H. Harland*, 711 F.2d at 978; *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir.1982);[5]; *see also World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir.1971) ("very little proof of actual confusion [is] necessary to prove the likelihood of confusion").

of its position, Defendant cites third-party X-formative registrations and encourages this Court to ignore precedent and consider a search of the PTO's register, conducted by Defendant, as evidence in ruling on its Motion to Dismiss.

As a preliminary matter, this Court should not consider these registrations. While "a document central to the complaint that the defense appends to its motion to dismiss [should] also [be] considered, provided that its contents are not in dispute", the existence of third-party marks that are dissimilar, or for dissimilar goods and services, are not central to Plaintiff's complaint and should not be considered. *Hodge v. Orlando Utilities Comm'n,* No. 609-CV-1059-ORL19DAB, 2009 WL 5067758, at *3 (M.D. Fla. Dec. 15, 2009) (citing *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999)). Defendant's trademark search results do not meet the centrality requirement imposed in *Harris*. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Plaintiff did not rely on evidence of third-party registrations or applications in its Complaint, nor was this evidence central to Plaintiff's claims. This evidence was not necessary for Plaintiff to make its claims. Whether the marks exist in a crowded field is a question of fact as to the commercial strength of the marks, not whether a likelihood of confusion is plausible. In addition, the search results are not undisputed because Plaintiff has not tested the accuracy of the results or had the opportunity to examine the affiant.

15

Even if the Court chooses to take judicial notice of the third-party registrations in Doc. 26, the existence of third-party registrations alone is not probative of the commercial strength or weakness of Plaintiff's mark. See 2 McCarthy on Trademarks and Unfair Competition § 11:89 (5th ed.) ("The mere citation of third-party registrations is not proof of third party uses for the purpose of showing a crowded field and relative weakness.") *See also In re Mighty Leaf Tea*, 601 F.3d 1342, 1347 (Fed. Cir. 2010) ("the issue is likelihood of confusion, and . . . more is required than a showing of the existence of various marks"); *Alfa Corp.*, 2023 WL 6276338, at *7 ("because the consuming public is unlikely to be aware of mere federal registrations of third-party marks, such evidence is not probative of the diminished distinctiveness of the original mark").

In addition, Defendant's citation of over five hundred marks, many of which are for unrelated goods and services or of which the relevant services have been canceled, is an irrelevant distraction from the facts of the case. Notably, Doc. 26 contains only one standard character, standalone "X" mark (Registration No. 3989025) for use with voice-over services, which are services entirely unrelated to Defendant's or Plaintiff's services. Defendant also includes (1) over one hundred registrations based on foreign registrations that do not require the registrant to provide proof of use in the marketplace; (2) marks that have been partially canceled with respect to the related goods and services and have no evidentiary

16

value; and (3) marks registered in class 35 that are registered for "retail store services" which are unrelated and irrelevant to Defendant's crowded field argument.

What Defendant does not provide is proof that any of these marks are being used in commerce in a way that damages or weakens the commercial strength of Plaintiff's X SOCIALMEDIA registered trademark or common law rights, nor does it successfully overcome or rebut the presumption that Plaintiff's incontestable mark is inherently distinctive.

> **III. Consumer confusion resulting from trademark infringement is a cognizable injury under FDUTPA and is sufficiently pleaded in the Complaint.**

To state a claim under the Florida Deceptive and Unfair Trade Practices Act, a plaintiff must plead (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Virgilio v. Ryland Group, Inc*., 680 F.3d 1329, 1338 n.25 (11th Cir. 2012).  "The Florida Deceptive and Unfair Trade Practices Act is intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. § 501.204.  The conduct considered to be a deceptive or unfair for the purposes of a FDUTPA claim may be defined by "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair,

deceptive or unconscionable acts or practices."2 Fla. Stat. § 501.203(3)(c). "Whether particular conduct constitutes such an unfair or deceptive trade practice is a question of fact. *Suris v. Gilmore Liquidating, Inc.*, 651 So.2d 1282, 1283 (Fla. 3d DCA 1995)." *Siever v. BWGaskets, Inc*., 669 F. Supp. 2d 1286, 1292–93 (M.D. Fla. 2009).

An act is considered deceptive or unfair if it is likely to mislead a consumer acting reasonably under the circumstances, and a claim under the FDUTPA may be predicated on a violation of any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair and deceptive acts. *See Maguire v. Southern Homes of Palm Beach, L.L.C*., 591 F.Supp.2d 1263, 1271 (S.D. Fla. 2008); *First Global Corp. v. Mansiana Ocean Residences, LLC*, No. 09-21092-CIV, 2011 WL 197376, at *2 (S.D. Fla. Jan. 20, 2011) (internal citations omitted); *Beachfront Realty, Inc.*, 2013 WL 12095166, at *3.

FDUTPA applies "to any act or practice occurring in the conduct of *any trade or commerce* even as between purely commercial interests." Moreover, the Florida courts have held that business entities may sue for damages pursuant to Fla. Stat. § 501.211(2). *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc*., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting *Beacon Prop. Mgmt., Inc. v. Pnr, Inc.,* 890 So.2d 274, 278 (Fla. 4th DCA 2004). (emphasis in original).

18

In its Complaint, Plaintiff alleged that Defendant violated the FDUTPA by knowingly using a similar mark in commerce in a manner that is causing and is likely to cause confusion in violation of the Lanham Act. Doc 1 ¶¶ 49-51. Plaintiff further alleged that Defendant's conduct diminished the value of Plaintiff's services in the marketplace. Doc 1. ¶¶ 23, 52-53. These allegations against Defendant constitute conduct likely to mislead consumers. In addition, a showing of the diminished value of goods or services as a result of deceptive or unfair conduct is sufficient to meet the damages requirement of a claim under the FDUTPA. Plaintiff has therefore satisfactorily pleaded a deceptive act or unfair practice by Defendant.

## CONCLUSION

X Social Media has alleged sufficient facts, which must be accepted as true, that allow this Court to conclude a likelihood of confusion is plausible. In addition, it has sufficiently pleaded the elements required for its FUDPTA claim. Defendant's Motion to Dismiss should be denied.

January 9, 2024                                     Respectfully submitted,

                                                    /s/ Kathryn G Kent
                                                    Kathryn G. Kent*
                                                    *Lead Counsel*
                                                    VT Bar #4455
                                                    Sophie Edbrooke*
                                                    Gerben Perrott, PLLC
                                                    1050 Connecticut Ave NW

Suite 500
Washington, DC 20036
Tel.: 202-294-2287
sedbrooke@gerbenlawfirm.com
kkent@gerbenlawfirm.com
*Admitted pro hac vice*
**Counsel for X Social Media LLC**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on January 9, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

  /s/Kathryn G Kent
Kathryn G. Kent
