UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

X SOCIAL MEDIA, LLC,

    Plaintiff,

v.

                                                  Case No. 6:23-cv-1903-JA-EJK

X CORP.,

    Defendant.
_____

ORDER

Before the Court are Defendant's Motion to Dismiss (Doc. 29), Plaintiff's Response (Doc. 32), and Defendant's reply (Doc. 39). Upon consideration of the parties' arguments, and for the reasons that follow, the Court will deny the motion in part and grant the motion without prejudice in part.

## I. BACKGROUND[1]

Plaintiff, X Social Media, LLC, is a Florida company founded in 2015 that provides online advertising and social media services to connect consumers with legal services. (Doc. ¶ 7). In addition, Plaintiff hosts "The X Blog" and a newsletter, "X Weekly." (*Id.* ¶ 11; Doc. 1–3). In September 2018, Plaintiff registered its trademark, "X SOCIALMEDIA," with the United States Patent and Trademark Office (USPTO). (Doc. 1–4). The mark was registered

---

[1] The Background section is derived from the allegations in the Complaint (Doc. 1), which are taken as true for the purpose of ruling on the Motion to Dismiss.

for use in association with advertising services and "consists of standard characters without claim to any particular font style, size, or color." (*Id.*). The registration further states that "[n]o claim is made to the exclusive right to use the following apart from the mark as shown: 'SOCIAL MEDIA.'" (*Id.* at 2). Since registering its trademark, Plaintiff has used it exclusively and continuously and its mark has become "incontestable." (*See* Doc. 1 ¶¶ 7 & 15).

Defendant, X Corp., formerly Twitter Inc., is an online news and social networking platform that Elon Musk acquired in 2022. (*Id.* ¶ 8). In July 2023, Twitter publicly announced that it was rebranding to "X." (*Id.*). Prior to the public announcement, in March 2023, Defendant made numerous international filings for the "X" mark that were later used as the basis for applications before the USPTO. (*Id.* ¶ 17). In April 2023, court filings acknowledged "X Corp." as a new legal entity. (*Id.* ¶ 18). Of Defendant's many trademark filings, one specifically requested a trademark on "X" to use in association with Defendant's "[b]usiness data analysis; promotional services; business consulting and information services; business, consumer, and market research." (*Id.* ¶ 27). Plaintiff claims that these are not only identical services to those it offers but also areas in which it has heavily invested for brand awareness. (*Id.*) Plaintiff further alleges that since Twitter's rebrand, Defendant's market strength, financial resources, social media clout, and

advertising leverage have dominated the consumer perception of Plaintiff's mark, causing consumer confusion and a loss in profit. (*Id.* ¶¶ 27, 28 & 38).

Plaintiff filed this action alleging four causes of action against Defendant: (1) registered trademark and service mark infringement under the Lanham Act; (2) Florida common law unfair competition; (3) violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA); and (4) common law trademark and service mark infringement. (Doc. 1). Defendant now moves to dismiss all claims. (Doc. 29).

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), parties may move to dismiss claims brought against them by asserting that the relevant pleading "fail[s] to state a claim upon which relief can be granted." On a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010). Generally, a complaint need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

3

to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III.  DISCUSSION

#### a. Federal and Florida Trademark Infringement and Unfair Competition — Counts I, II & IV

To state a claim for federal trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), a plaintiff must plausibly allege that (1) its mark was entitled to protection and (2) the defendant used a mark that was identical or so similar that it was likely to cause consumer confusion. 15 U.S.C. § 1125(a); *Welding Servs, Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007). Claims of trademark infringement and unfair competition[2] under Florida law are analyzed in the same way as their federal counterparts. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003).

Plaintiff's Complaint sufficiently pleads both prongs of trademark infringement. First, Plaintiff alleges that it has a registered trademark for "X SOCIALMEDIA," and that its mark has become "incontestable." (*See* Doc. 1 ¶¶ 7 & 15). Although Defendant maintains that Plaintiff's rights are in "X SOCIALMEDIA" and not "X" —weakening Plaintiff's claim—this argument

---

[2] Plaintiff alleges that Defendant's use of the "X" mark is "deceptive and misleading" and therefore constitutes unfair competition under Florida common law. (Doc. 1 ¶ 43).

4

does not show that Plaintiff's mark lacks protection. Plaintiff has sufficiently alleged that its mark is entitled to trademark protection.

Second, Plaintiff plausibly alleges a likelihood of consumer confusion. Traditionally, the likelihood-of-confusion analysis in trademark cases follows a "forward confusion" pattern: "customers mistakenly think that the junior user's goods or services are from the same source as or are connected with the senior user's goods or services." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:10 (5th ed.). This case, however, presents a less typical factual scenario: alleged "reverse confusion." In reverse-confusion cases:

> [T]he plaintiff is usually a commercially smaller, but more senior, user of the mark at issue. The defendant tends to be a commercially larger, but more junior, user of the mark. The plaintiff thus does not argue that the defendant is using the mark to profit off plaintiff's goodwill; instead, the plaintiff brings suit because of the fear that consumers are associating the plaintiff's mark with the defendant's corporate identity. It is this false association and loss of product control that constitutes the harm in reverse-confusion cases.

*Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 121 (11th Cir. 2022). Here, both parties acknowledge reverse confusion as the correct designation for this set of facts: Plaintiff—the senior user of the mark—contends that Defendant—the junior but more powerful user—is illegally using Plaintiff's mark, creating a likelihood consumers will believe Defendant is the source of Plaintiff's services.

5

The likelihood-of-confusion analysis "is highly fact-specific and depends for its application on the presence of a critical mass of key facts." *Wreal*, 38 F.4th at 128 (quoting 4 McCarthy, supra, § 23:10). Because this case is only at the motion-to-dismiss stage, Plaintiff is correct that a full likelihood-of-confusion analysis is premature. (*See* Doc. 32 at 2, 9). Plaintiff need only provide the Court with plausible allegations that consumer confusion is likely. *See Beachfront Realty, Inc. v. Beachfront Int'l Realty, LLC*, No. 13-CV-21265, 2013 WL 12095166, at *2 (S.D. Fla. Dec. 13, 2013) ("At the motion to dismiss stage . . . Plaintiff's allegations that Defendants used a similar mark and that Defendants are in the same business as Plaintiff, such that Defendants['] mark is likely to cause confusion among consumers . . . are sufficient to state a plausible claim for trademark infringement."); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008) ("[T]he 'likelihood of confusion' is a fact-specific inquiry best left for decision after discovery."); *see also Wreal*, 38 F.4th at 127. ("[L]ikelihood of confusion generally is a question of fact, [though] in limited circumstances it may be decided as a matter of law via summary judgment." (citation omitted)).

Here, Plaintiff alleges, among other things, that Defendant's mark is confusingly similar to its own, (Doc. 1 ¶¶ 8, 22 & 33); that Defendant had knowledge of Plaintiff's preexisting rights to the mark prior to its rebrand, (Doc. 1 ¶¶ 16, 24); and that a portion of Defendant's vast business overlaps

with Plaintiff's sole business: social media, advertising services, and data analysis, (Doc. 1 ¶¶ 8, 10). Plaintiff attached to its Complaint a Google search result suggesting Elon Musk owns "x social media" as well as evidence of multiple headlines in major news outlets referring to Defendant as "X Social Media." (*Id.* ¶ 29, Doc. 1–8). Plaintiff's allegations of likelihood of confusion are sufficient at this stage of the case.

Because Plaintiff has plausibly alleged both that its mark is entitled to protection and that there is a likelihood of confusion, Defendant's motion to dismiss Counts I, II, and IV is denied.

### b. FDUTPA — Count III

To state a claim under FDUTPA, a plaintiff must plead (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (citing *Chicken Unlimited, Inc. v. Bockover*, 374 So. 2d 96, 97 (Fla. 2d DCA 1979)).[3]

As part of pleading a deceptive act or unfair practice, the plaintiff must allege that the conduct in question is likely to cause actual harm to the end consumer. *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019); *see also Car Body Lab Inc. v. Lithia Motors, Inc.*, No. 21-CV-

---

[3] "[Federal appellate courts] are bound to follow decisions of the state's intermediate appellate courts [on issues of Florida law] unless there is some persuasive indication that the highest court of the state would decide the issue differently." *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012).

7

21484, 2021 WL 2658693, at *3 (S.D. Fla. June 22, 2021); *J.G.G. Tobacco Holding Co. v. Antigua Esteli Tobacco, Corp.*, No. 19-23732, 2020 WL 4926582, at *5 (S.D. Fla. May 20, 2020) ("Defendants have not asserted sufficient factual allegations to state a claim under FDUTPA. Consumer harm or injury is a necessary element of a FDUTPA claim."). While a commercial entity such as a legitimate business enterprise may bring a FDUTPA claim, the plaintiff must still plead facts alleging that consumers have been harmed. *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So.3d 164, 169 (Fla. 4th DCA 2015); *see also Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc.*, No. 3:17-cv-00686, 2018 WL 7351689 (N.D. Fla. Sept. 27, 2018) (dismissing Plaintiff's FDUTPA claim for failure to allege consumer injury).

Here, the closest the Complaint comes to alleging harm to consumers is its assertion that Defendant's mark has resulted in present and likely future consumer confusion. This allegation, however, is not sufficient to plead a FDUTPA claim. *See, e.g., Car Body Lab Inc. v. Lithia Motors, Inc.*, No. 21-CV-21484, 2021 WL 2658693, at *3 (S.D. Fla. June 22, 2021), *report and recommendation adopted*, No. 21-21484-CIV, 2021 WL 3403208 (S.D. Fla. Aug. 4, 2021) (dismissing plaintiff's FDUTPA claim without prejudice because its allegations of consumer confusion were not sufficient to allege consumer

8

injury). Accordingly, Plaintiff's FDUTPA claim will be dismissed without prejudice and with leave to replead this claim.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Defendant's Motion to Dismiss (Doc. 29) is **DENIED** as to Counts I, II & IV and **GRANTED without prejudice** as to Count III. Count III of the Complaint (Doc. 1) is **dismissed without prejudice**.

2. Plaintiff may file an amended complaint on or before July 31, 2024, if it wishes to replead its FDUTPA claim.

**DONE** and **ORDERED** in Orlando, Florida, on July 15, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record