# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

X SOCIAL MEDIA LLC,

        Plaintiff,

v.

X CORP.,

        Defendant.

Case No. 6:23-CV-01903-JA-UAM

### DEFENDANT'S TIME-SENSITIVE MOTION TO STRIKE AS UNTIMELY PORTIONS OF PLAINTIFF'S EXPERT REBUTTAL REPORT OF DAVID J. FRANKLYN AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 26 and 37, Section I.B of the Middle District of Florida Handbook on Civil Discovery Practice, and the Court's Order entering the Case Management and Scheduling Order in the present action, Doc. 36, Defendant X Corp. moves this Court for an order striking Sections IX–XIV of the Rebuttal Report of David J. Franklyn, for failure to timely disclose the affirmative opinions contained therein.[1]

### TIME-SENSITIVE NATURE OF MOTION

This motion is time sensitive because the requested relief is intended to clarify the scope of the opinions that Professor Franklyn is permitted to offer, and will, in

---

[1] For the avoidance of doubt, this motion seeks relief under Federal Rule of Civil Procedure 37(c)(1) to strike from the record and/or prevent Plaintiff from relying on untimely expert testimony due to violations of this Court's case management and scheduling order and Federal Rule of Civil Procedure 26(a)(2)(D). Defendant does not intend for this motion to be, nor should it be construed as, a *Daubert* motion, which instead evaluates the reliability and admissibility of an expert's opinions. At the appropriate time, Defendant will make a separate *Daubert* motion with respect to other significant issues contained in the Rebuttal Report of David J. Franklyn.

turn, impact the scope of the remaining discovery in this matter. The deadline for the close of discovery is **April 2, 2025**. So that Defendant can take the Court's ruling into account when taking its remaining depositions, Defendant requests an order on this motion on or before **March 26, 2025**—one week before discovery closes.

## PRELIMINARY STATEMENT

This is a case for trademark infringement and related claims concerning the parties' respective use of the letter "X" in connection with distinct product and service offerings. On February 4, 2025, Plaintiff served the "Rebuttal Report of David Franklyn." Despite this styling, and the fact that Plaintiff's deadline to serve any affirmative expert opinions was over *four months ago* (October 25, 2024), Professor Franklyn advances a host of "affirmative opinions" that rebut nothing in either of Defendant's expert reports. As explained in more detail below, those "affirmative opinions" are thus untimely and improper, and admitting them would unfairly prejudice Defendant. Specifically, Defendant has been litigating this matter for over a year, conducting extensive discovery and depositions, and crafting its own expert reports, all in the absence of these undisclosed affirmative theories. They should be stricken.

## BACKGROUND

Plaintiff filed the Complaint in this case on October 2, 2023. Doc. 1. On January 22, 2024, the Court entered a binding Case Management and Scheduling Order ("Scheduling Order"). Doc. 36. The deadlines set in the Scheduling Order

were based on the parties' joint proposed Case Management Report (Doc. 35), which was the result of extensive negotiation between the parties (through both e-mail communication and during the parties' Rule 26(f) planning conference).

Relevant to this motion, the Scheduling Order set the following deadlines for the disclosure of expert reports:

- Plaintiff's reports by **October 25, 2024**;
- Defendant's reports by **December 6, 2024**; and
- Rebuttal reports by **January 21, 2025**.

Plaintiff did not serve any affirmative expert reports by the October 25, 2024 deadline. Defendant, on December 6, 2024, timely served two expert reports: (i) a marketing report authored by Peter N. Golder, Ph.D. (the "Golder Report"), and (ii) a consumer survey report concerning likelihood of reverse confusion authored by Hal Poret (the "Poret Report"). On January 14, 2025, Plaintiff, with the consent of Defendant, moved this Court to extend the deadline for its rebuttal reports to **February 4, 2025**, which the Court granted (Doc. 49). On February 4, 2025, Plaintiff served a single report titled "Rebuttal Report of David Franklyn" (the "Franklyn Report"), attached hereto as Exhibit 1.[2]

Though titled a rebuttal report, the Franklyn Report contains untimely "affirmative opinions." Specifically, the Franklyn Report states that Professor

---

[2] Even after being granted a two-week extension, Plaintiff served an incomplete version of the Franklyn Report and requested a *further* extension from Defendant to supplement the Franklyn Report with the requisite underlying data. Defendant agreed to accommodate Plaintiff's request before receiving the Franklyn Report containing the untimely opinions at issue here.

3

Franklyn is "offering both [his] *affirmative* opinions based on [his] own likelihood of confusion studies (the "Franklyn Surveys") and *rebuttal* opinions regarding the reports produced by Hal Poret and Peter Golder." Ex. 1 at 6 (emphasis added).

The Franklyn Surveys include (i) a reverse sequential lineup survey (*e.g.*, a reverse two-room *Squirt*);[3] and (ii) a survey to measure initial interest confusion.[4] The Franklyn Report discusses the methodology and results from each survey, purporting to support Plaintiff's claims of likelihood of confusion. Neither survey rebuts the opinions in the Poret Report or Golder Report. Rather, both are affirmative surveys and opinions (as characterized by Professor Franklyn himself). Accordingly, Plaintiff should not be permitted to rely upon expert opinions contained in its so-called "rebuttal" report that, for the first time, address issues that should have been included in an initial expert report due months earlier.

---

[3] Professor Franklyn describes this survey as follows: Respondents were assigned to "test" or "control" cells, and then shown images of Defendant's webpages. Subsequently, respondents were shown either test or control images of Plaintiff's website, along with "buffer images" of two other legal advertising services. Respondents were then asked questions regarding the source, approval or sponsorship, and affiliation of the product depicted with respect to the earlier-viewed images of Defendant's webpages. Ex. 1 at 44.

[4] Professor Franklyn describes this survey as follows: Respondents were shown Google search results for the keywords "x social media advertising," Respondents were shown either "test" or "control" results, with the test results showing Defendant's X mark, and the control results showing a fake "TR Media" mark. Respondents were subsequently asked questions regarding the source, approval or sponsorship, and affiliation or connection of the search results with respect to a legal advertising services company "X Social Media," and asked to click on all search results they believed were the same company, a sponsored or approved company, or an affiliated or connected company. Ex 1 at 44–45.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs expert disclosures. Pursuant to Rule 26, "[a] party must make its expert disclosures at the times and in the sequence that the court orders." *Demetrius Cross v. Johnson*, No. 23-CV-60393, 2023 WL 8878224, at *1 (S.D. Fla. Dec. 22, 2023) (quoting FRCP 26(a)(2)(D)). The disclosure requirement of Rule 26 includes the disclosure of rebuttal experts. *See Ohio State Troopers Ass'n v. Point Blank Enters.*, No. 18-CV-63130, 2020 WL 1666763, at *3 (S.D. Fla. Apr. 3, 2020) (citing *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 717 (11th Cir. 2019)). "An expert may be used for rebuttal if the expert offers evidence that is 'intended solely to contradict or rebut evidence on the same subject matter identified by' the affirmative expert of another party." *Kroll v. Carnival Corp.*, No. 19-23017-CIV, 2020 WL 4793444, at *4 (S.D. Fla. Aug. 17, 2020) (quoting FRCP 26(a)(2)(D)(ii)).

It is improper to use rebuttal testimony to introduce a new theory for the first time. *See id.* at *4 ("[A] rebuttal report cannot be used to advance new arguments or evidence."). "Where a party attempts to designate as a 'rebuttal' expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be stricken by the Court for violating Rule 26(a) and the Court's governing scheduling order." *Id.* at *5. As the *Kroll* court explained, "[d]istrict courts, including those in Florida, are not hesitant to exclude or substantially limit expert opinion testimony...when an expert is masquerading as a rebuttal expert because the

5

attorney missed the deadline for expert witness disclosures and tried to cure that mistake by strategically and incorrectly attaching the 'rebuttal expert' designation to the tardily-disclosed report." *Id.* at *5 (citing *Flamingo South Beach I Condo. Ass'n, Inc., v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 21-26 (11th Cir. 2012)).

When a party submits an improper rebuttal report or an untimely initial affirmative report, such a report is appropriately—indeed, necessarily—stricken pursuant to Rule 37(c)(1). The Eleventh Circuit has explained that "compliance with the requirements of Rule 26 is not merely aspirational" and that "the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and prevent surprise." *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004). As a result, when a party fails to satisfy its Rule 26(a) expert disclosure requirements, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Demetrius Cross*, 2023 WL 8878224, at *1 (quoting Rule 37(c)(1)). The burden to establish that untimely or improper disclosure is substantially justified or harmless is on the rule-breaking party. *See Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).

6

# ARGUMENT

I.   **Sections IX–XIV of the Franklyn Report Contain Untimely Affirmative Opinions that Should be Stricken.**

There is no dispute that Plaintiff missed the Court-ordered deadline to serve affirmative expert reports. There is similarly no dispute that the Franklyn Report contains "affirmative opinions." Professor Franklyn explains that he was retained by Plaintiff to "conduct a survey to test for the likelihood of confusion between Defendant X Corp.'s mark and Plaintiff's mark," "further...to provide analysis as to whether there is a likelihood of initial interest confusion between X Corp. and X Social Media," and "[i]n addition...to give [his] rebuttal opinion in response to two reports produced by experts retained by Defendant X Corp." Ex. 1 at 6. The Franklyn Report further states that it was submitted "offering both [Professor Franklyn's] affirmative opinions based on [his] own likelihood of confusion studies (the "Franklyn Surveys") and rebuttal opinions regarding the reports produced by Hal Poret and Peter Golder." The affirmative opinions, which Professor Franklyn admits are based on both his *Squirt* survey and initial interest confusion survey, are untimely, and should be stricken. *See All-Tag Corp. v. Checkpoint Sys.*, 408 F. Supp. 3d 1347, 1352-53 (S.D. Fla. 2019) (striking a new affirmative opinion improperly and untimely offered in a rebuttal report).

*All-Tag Corp.* is particularly instructive here. There, the defendant moved to strike portions of the plaintiff's rebuttal expert report as untimely. *Id.* As is the case here, the report at issue in *All-Tag Corp.* "made clear" which sections of the report

7

were rebuttal opinions as opposed to affirmative opinions. *Id.* The court explained that the portion described as "an affirmative report based on [defendant's expert's approach]" was "clearly a new affirmative opinion." *Id.* As a result, the court determined that such opinions were "required to [be served by] the affirmative expert report deadline, not [] the rebuttal report deadline," and struck them. *Id.* Here, the Franklyn Report clearly delineates Professor Franklyn's "rebuttal opinions" from his "affirmative opinions." Because the affirmative opinions were not served by the appropriate deadline, they should be stricken.

## II.   Sections IX–XIV of the Franklyn Report Contain Improper Rebuttal Opinions.

In addition to being untimely, Professor Franklyn's initial interest confusion survey, referenced throughout Sections IX through XIV of the Franklyn Report, and discussed in detail in Section XIII of the Franklyn Report, is improper. Specifically, the Franklyn Survey discussing "initial interest confusion"—a theory that is entirely absent from Defendant's expert reports,[5] any written discovery served by Plaintiff, and all of the operative pleadings—does not rebut a single theory or opinion set forth to date by either party in this case.

Plaintiff's affirmative theories in the "rebuttal" report come as a surprise to Defendant. Until Plaintiff's submission of Professor Franklyn's "rebuttal" report, Plaintiff did not advance, or even indicate it would be pursuing, a theory of "initial

---

[5] While it is clear from the face of the Franklyn Report that it is not rebutting the opinions contained in the Poret Report or Golder Report, if the Court would like to examine either or both of those reports, Defendant can file copies of those reports, along with a motion to seal.

interest confusion." Plaintiff's pleadings, instead, put forward a theory of "reverse confusion." *See* Doc. 1 ¶¶ 22, 23, 37, 61. Specifically, Plaintiff pled in its Complaint that Defendant's conduct "quickly caused reverse confusion" or "resulted in consumer confusion in the form of reverse confusion," but did not at any time put forward a theory of "initial interest confusion." *See id.* ¶¶ 22, 61. Similarly, Plaintiff's opposition brief to Defendant's motion to dismiss asserted only a theory of "reverse confusion" and is devoid of any mention of "initial interest confusion." *See* Doc. 32 at 12 ("X Social Media has alleged reverse confusion..."); *Id.* ("In a reverse-confusion case..."). The Court's Order on Defendant's motion to dismiss confirms this is the theory Plaintiff had advanced. *See* Doc. 41 at 5 ("Traditionally, the likelihood-of-confusion analysis in trademark cases follows a 'forward confusion pattern'...[t]his case, however, presents a less typical factual scenario: alleged 'reverse confusion.'").

Professor Franklyn's discussion of "initial interest confusion" does nothing to address either of Defendant's experts' opinions, critique their methodology, identify facts they either overlooked or misinterpreted, or otherwise examine the opinions of Defendant's experts. As such, Professor Franklyn's opinions concerning initial interest confusion do not serve the purpose of proper rebuttal testimony. *Demetrius Cross*, 2023 WL 8878224, at *2.

Plaintiff's decision to raise a theory of "initial interest confusion" for the first and only time in a rebuttal report is improper. Accordingly, Professor Franklyn's opinions regarding "initial interest confusion" should be stricken.

### III. Defendant Will Be Unduly Prejudiced if Sections IX–XIV of the Franklyn Report are not Stricken.

Allowing Plaintiff to rely on Professor Franklyn's untimely and improper affirmative opinions would unduly prejudice Defendant. The deadline for Defendant to serve expert reports has long since passed, thousands of documents have been exchanged and reviewed, and depositions have been conducted by both sides—all based on the theories known to Defendant at the time. Under the current schedule, Defendant has no opportunity to rebut Professor Franklyn's affirmative opinions. *See All-Tag Corp.*, 408 F. Supp. 3d at 1353 (striking untimely affirmative opinions in rebuttal report where, pursuant to the court's scheduling order, the opposing party no longer had time to rebut the affirmative opinions).

Regardless, allowing Defendant to rebut Professor Franklyn's untimely and improper opinions at this late stage would not cure the prejudice to Defendant. Between now and the April 2, 2025 deadline, the parties must conduct and defend the remaining depositions in this matter, which could amount to several depositions in several different states. At this point in the discovery process, Defendant must focus its efforts on completing these depositions, and the expert report phase of discovery must remain closed as initially ordered by this Court. Otherwise, Defendant would have to engage an expert to review Professor Franklyn's affirmative opinions, prepare a rebuttal report, and possibly design and conduct rebuttal surveys. Such efforts cannot be completed before the close of discovery and would require a lengthy delay of future deadlines (including not only an extension of

the discovery deadline, but also an extension for dispositive motions, *Daubert* motions, and possibly even trial). *See Potish v. R.J. Reynolds Tobacco Co.*, No. 15-81171-CV, 2017 WL 5952892, at *4 (S.D. Fla. Nov. 30, 2017) (striking a supplemental expert report as untimely, explaining that allowing the report to stand would require allowing the opposing party's expert to review and respond to the additional opinions, necessitating a lengthy delay); *see also Noel v. BP Expl. & Prod., Inc.*, 346 F.R.D. 139, 146 (S.D. Ala. 2024) (granting motion to strike untimely expert disclosures, finding such untimely disclosures prejudicial to defendant where it would require adjustment of the already-passed expert discovery deadlines, and explaining that granting a continuance to allow defendant to respond would not cure the prejudice at issue).

      Had Defendant known that Plaintiff intended to pursue a theory of "initial interest confusion" before Plaintiff belatedly disclosed that theory for the first time in an expert rebuttal report, that would have impacted Defendant's litigation strategy. For example, Defendant could have retained a different or additional survey expert, designed and conducted its own "initial interest confusion" survey and analysis, requested and collected different documents, reviewed the documents that it did collect for different information, sought different depositions, or asked different questions during depositions already taken. *See, e.g., Cape Christian Fellowship, Inc. v. Landmark Am. Ins. Co.*, No. 2:20-cv-410, 2022 WL 971776, at *9 (M.D. Fla. Mar. 31, 2022) (finding untimely disclosure not harmless, and striking untimely affirmative opinions, explaining "the purpose of staggered expert disclosure deadlines is to allow

11

a plaintiff to present expert reports...followed by defendant's reports...and rebuttal, and finally followed by plaintiff's rebuttal reports. Without [Plaintiff's] timely disclosure of expert reports, [Defendant] was unable to rebut issues addressed by [Plaintiff's] experts"); *see also 1550 Brickell Assocs. v. QBE Ins. Corp.*, No. 07-22283-CIV, 2010 WL 1947636, at *2 (S.D. Fla. May 13, 2010) (striking experts disclosed as rebuttal experts because they "would be testifying on entirely new subject areas," and reasoning that denying the motion to strike "would further prolong discovery").

Moreover, earlier this month, Defendants traveled to Florida to depose two of Plaintiff's key witnesses: Jacob Malherbe, Plaintiff's Founder and Chief Executive Officer, and Samuel Clark, Plaintiff's Director of Client Operations. During these depositions, Defendant did not yet have the benefit of having reviewed the Franklyn Report (as it was served after Mr. Malherbe's deposition concluded, and in the late evening hours the night before Mr. Clark's deposition), and could not test any of the new theories alleged in the Franklyn Report. If the Franklyn Report is not stricken, Defendant will be prejudiced if it does not have the opportunity to re-depose these witnesses, but additional depositions will lead to tens, or possibly hundreds, of thousands of dollars in incremental cost that would have been avoidable, and which Defendant otherwise would not have incurred but for Plaintiff's failure to comply with the rules.

Further, even if the Court was willing to allow Defendant to prepare and serve a sur-rebuttal to respond to Professor Franklyn's affirmative opinions after the current deadline for the close of discovery, that would not cure the prejudice to

12

Defendant. If Plaintiff is allowed to rely on Professor Franklyn's new affirmative opinions, Defendant would have to re-review all of the documents produced in the litigation thus far with an eye specifically towards Plaintiff's new theories and would have to retake the depositions of any witness deposed prior to the Court entering an order on this motion. The only way such prejudice can be cured short of striking Professor Franklyn's untimely and improper opinions is if Plaintiff bears those additional costs incurred by Defendant resulting from Plaintiff's failure to comply with the Court's Scheduling Order. *See, e.g.*, Federal Practice and Procedure (Wright & Miller), 8B Fed. Prac. & Proc. Civ. § 2289.1 (3d ed.) ("Rule 37(c)(1) authorizes the court to require payment of reasonable expenses, including attorneys' fees, caused by the failure to disclose. In some cases, this presumably would include any additional costs required to respond to new matters or witnesses and…amounts expended to obtain information that should have been disclosed in the first instance."); *Lavell v. Camden Cnty. Coll.*, No. 21-6832, 2023 WL 4074077, at *7–8 (D.N.J. June 20, 2023) (finding that the need for additional discovery arising out of plaintiff's untimely and improper rebuttal report warranted sanctions under Rule 37, and ordering that plaintiff bear defendant's incurred costs to re-depose necessary witnesses); *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. CV155477, 2019 WL 581544, at *6 (D.N.J. Feb. 13, 2019) (imposing a sanction under Rule 37(c) for reimbursement of attorney's fees and costs that a party incurred as a consequence of the opposing party's improper supplemental expert report).

Since Defendant now cannot pursue the litigation strategy it otherwise might have, and would have to incur significant expenditure of both time and money to remedy Plaintiff's disregard for Court-ordered deadlines, Defendant will be unfairly prejudiced (in a manner which Plaintiff cannot justify by any means), and as a result, Plaintiff should be precluded from relying on the improper affirmative expert opinions of Professor Franklyn.

## CONCLUSION

For the foregoing reasons, X Corp. respectfully requests that the Court, pursuant to Rule 37(c)(1), strike Sections IX–XIV of Plaintiff's rebuttal report of David J. Franklyn or otherwise prohibit Plaintiff from relying on such opinions in this case.

## LOCAL RULE 3.01(g) CERTIFICATION

On February 24 and 25, 2025, counsel for the parties conferred via email on the relief sought herein. Plaintiff intends to oppose the relief sought.

Respectfully submitted this 26th day of February, 2025

| | |
|---|---|
| Dustin Mauser-Claassen | /s/ *Megan K. Bannigan* |
| Florida Bar No. 0119289 | Megan K. Bannigan (Lead Counsel)* |
| Quinn B. Ritter | David H. Bernstein* |
| Florida Bar No. 1018135 | Jared I. Kagan* |
| KING, BLACKWELL, ZEHNDER, | Nicole M. Flores* |
|   & WERMUTH, P.A. | Debevoise & Plimpton LLP |
| 25 E. Pine St. | 66 Hudson Blvd |
| Orlando, FL 32801 | New York, NY 10001 |
| Telephone: (407) 422-2472 | Telephone: (212) 909-6000 |
| dmauser@kbzwlaw.com | mkbannigan@debevoise.com |
| qritter@kbzwlaw.com | dhbernstein@debevoise.com |
| | jikagan@debevoise.com |
| | nmflores@debevoise.com |
| | *Admitted pro hac vice* |

*Counsel for Defendant, X Corp.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on February 26, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Dustin Mauser-Claassen*
Dustin Mauser-Claassen
Florida Bar No.: 0119289