UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

X SOCIAL MEDIA LLC,

        Plaintiff,

v.

        CASE NO. 6:23-cv-1903-JA-UAM

X CORP.,

        Defendant.

## ORDER

This case is before the Court on Defendant's motion to strike (Doc. 51), Plaintiff's response (Doc. 54), and Defendant's reply (Doc. 60). Based on the Court's review of the parties' submissions, the motion must be granted.

I.    BACKGROUND

This is a case for trademark infringement relating to the parties' use of the letter "X" in association with their respective businesses. (*See* Doc. 1 ¶ 36). On January 22, 2024, the Court entered a scheduling order (Doc. 36) that set deadlines for the parties to disclose affirmative and rebuttal expert reports. Plaintiff did not disclose any affirmative expert reports by its deadline to do so, but Defendant served two affirmative expert reports: (1) a marketing report authored by Peter N. Golder, Ph.D., and (2) a consumer survey report on the likelihood of reverse confusion authored by Hal Poret.

On its rebuttal report deadline, Plaintiff served the "Rebuttal Report of David Franklyn" (Franklyn Report) (Doc. 51-1). Sections IX–XIV of the Franklyn Report include a reverse two-room *Squirt*[1] sequential lineup survey as well as a survey to measure initial-interest confusion (Franklyn Surveys). (Doc. 51-1 at 43–93). Defendant argues sections IX–XIV should be struck because the Franklyn Surveys constitute untimely new affirmative opinions that go beyond proper rebuttal of Defendant's experts.

## II. LEGAL STANDARDS

The Federal Rules of Civil Procedure allow for rebuttal testimony when it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). "The term 'same subject matter' as used in Rule 26(a)(2)(D)(ii) has been construed broadly." *Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC*, No. 2:18-cv-529, 2022 WL 4017049, at *3 (M.D. Fla. Sept. 4, 2022) (citing *Northrup v. Werner Enter.*, No. 8:14-cv-1627, 2015 WL 4756947, at *2 (M.D. Fla. Aug. 11, 2015)). However, "a rebuttal opinion should not be used to advance new arguments or present new evidence." *Id.* at *3; *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*,

---

[1] *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980) (establishing the "*Squirt*" test for likelihood of confusion in cases involving concurrent use of marks. In a "two-room reverse *Squirt*" survey, consumers are exposed to the junior mark in isolation and surveyed for potential confusion from prior exposure to the senior mark.

2

No. 10–24310–CIV, 2011 WL 6372198, at *4 (S.D. Fla. Dec. 20, 2011). Indeed, "[r]ebuttal testimony is permitted only when it directly addresses an assertion raised by an opponent's experts." *Wherevertv, Inc.*, 2022 WL 4017049, at *3 (alteration in original) (quoting *In re Trasylol Prods. Liab. Litig.*, No. 1:09-MD-01928, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010)).

"The purpose of rebuttal evidence is 'to explain, repel, counteract, or disprove the evidence of the adverse party,' and the decision to permit rebuttal testimony is one that resides in the sound discretion of the trial judge." *United States v. Gold*, 743 F.2d 800, 818 (11th Cir. 1984) (quoting *United States v. Delk*, 586 F.2d 513, 516 (5th Cir. 1978)).[2] "Courts are empowered to exercise their discretion and judgment in determining if a rebuttal expert report addresses the same subject matter as the opposing party's initial expert report." *Id.* (citing *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687, 2018 WL 3583002, at *2 (S.D. Fla. July 26, 2018)). Federal district courts "are not hesitant to exclude or substantially limit expert opinion testimony at trial when an expert is masquerading as a rebuttal expert." *Kroll v. Carnival Corp.*, No. 19-23017-CIV, 2020 WL 4793444, at *5 (S.D. Fla. Aug. 17, 2020) (collecting cases).

---

[2] Decisions of the Fifth Circuit prior to October 1, 1981, are binding on the courts of the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

## III. DISCUSSION

Defendant argues that the Franklyn Surveys are not responsive to its experts' opinions and improperly advance new theories of the case beyond the deadline to submit affirmative expert opinions. In response, Plaintiff argues that the Franklyn Surveys properly rebut Defendant's experts and that even if the Court finds otherwise, admitting the Franklyn Surveys into evidence would be harmless.

### A. Untimely Affirmative Opinions

The Franklyn Surveys include: (1) a reverse-confusion survey (Doc. 51-1 at 61–78) and (2) an initial-interest-confusion survey (*id.* at 79–92). Defendant argues the Franklyn Surveys are untimely affirmative opinions. In support of its argument, Defendant notes that the Franklyn Report acknowledges that it contains Professor Franklyn's "affirmative opinions based on [Professor Franklyn's] own likelihood of confusion studies (the 'Franklyn Surveys') and rebuttal opinions regarding the expert reports produced by Hal Poret and Peter Golder." (Doc. 51-1 at 6). Indeed, the Franklyn Report itself "ma[kes] clear" which sections of the report contain rebuttal opinion as opposed to affirmative opinions. (Doc. 51-1 at 6). For that reason alone, the Court could strike Professor Franklyn's "clearly [] new affirmative opinion[s]," because such affirmative opinions were required to be served by the affirmative expert report deadline, not the rebuttal report deadline. *See All-Tag Corp. v. Checkpoint Sys., Inc.*, 408

F. Supp. 3d 1347, 1352 (S.D. Fla. 2019). Nevertheless, the Court will consider whether the Franklyn Surveys constitute proper rebuttal opinion despite their designation in the Franklyn Report as affirmative opinions.

Defendant argues that the initial-interest-confusion survey is improper because "initial interest confusion" is an entirely new theory that was set forth for the first time in this litigation within the Franklyn Report. Defendant contends that Plaintiff had only asserted a theory of "reverse confusion" prior to serving the Franklyn Report. (Doc. 51 at 9 (citing Doc. 1 ¶¶ 22, 23, 37, 61)). Thus, Defendant argues that Professor Franklyn's initial-interest-confusion survey is not plausibly within the scope of proper rebuttal to Defendant's experts. Moreover, Defendant argues that Professor Franklyn's *Squirt* survey is not plausibly issued in rebuttal to Defendant's experts because Defendant's experts do not rely on a *Squirt* survey. In response, Plaintiff argues that the Franklyn Surveys address "the overall subject matter of likelihood of confusion." (Doc. 54 at 3). Plaintiff points to Franklyn's "table of contents and summary of opinions," which Plaintiff claims "address[es] the flaws and omissions found in the Porter [sic] Eveready survey." (*Id.* at 4). Plaintiff also argues that the findings in the Franklyn Survey can be used to cast doubt on the claims made by Defendant's experts. (Doc. 54 at 9–13).

5

As Plaintiff notes, courts within the Eleventh Circuit have agreed that the phrase "same subject matter" should not be "narrowly construed." *See 1550 Brickell Assocs. v. QBE Ins. Corp.*, No. 07-22283-CIV, 2010 WL 1947636, at *2 (S.D. Fla. May 13, 2010) (citing *TC Sys. Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002)). And rebuttal experts "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 396 (M.D. Fla. 2018). However, courts must guard against a party "trying to use their rebuttal witnesses to introduce new topics." *1550 Brickell Assocs.*, 2010 WL 1947636, at *2.

Based on review of the Franklyn Report and the parties' submissions, the Court finds that the Franklyn Surveys constitute untimely affirmative opinions. The concept of initial-interest confusion was not the subject of Defendant's experts' opinions and was introduced for the first time in this litigation within the Franklyn Report. Even if the results of Professor Franklyn's initial-interest confusion survey could be used to undermine Defendant's position, the initial-interest confusion survey nevertheless constitutes an improper affirmative opinion. Likewise, Defendant's experts did not conduct a *Squirt* survey, and Professor Franklyn's *Squirt* survey does not address any of the opinions of Dr. Golder or Mr. Poret. Plaintiff's reliance on the "table of contents and summary

6

of opinions" section of the Franklyn Report, as well as Professor Franklyn's analysis of Dr. Golder and Mr. Poret's opinions in sections I–VIII, do not tend to show the admissibility of the Franklyn Surveys in sections IX–XIV, where Defendant's expert's opinions are never mentioned.

### B. Substantially Justified or Harmless

Having found that the Franklyn Surveys constitute untimely affirmative opinions, the next issue is whether Plaintiff may rely on them anyway. Rule 37(c)(1) states that if a party fails to timely provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether the failure to disclose under Rule 26 was substantially justified or harmless, courts consider "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06–cv–40–T, 2009 WL 92826, at *3 (M.D. Fla. Jan. 14, 2009). "The burden of establishing that a failure to disclose was substantially justified

or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).

Defendant argues that allowing Plaintiff to rely on the Franklyn Surveys would cause Defendant unfair prejudice. Defendant notes that it exchanged thousands of documents, took many depositions, and selected expert witnesses strategically in response to how Plaintiff litigated its case. Defendant contends that it would be unfair to allow the sweeping affirmative opinions contained within the Franklyn Surveys to be introduced for the first time during a rebuttal report. Defendant claims that had it known Plaintiff would be relying on *Squirt* and initial-interest-confusion surveys, it would have meaningfully altered its discovery strategy throughout this case. Defendant posits that significant costs and delays would have to be incurred for Defendant to adequately remedy the potential prejudice.

In response, Plaintiff argues that Defendant can depose Professor Franklyn and Jacob Malherbe, Plaintiff's founder and chief executive officer, and that the Court could authorize Defendant to submit a surrebuttal to the Franklyn Report. (Doc. 54 at 15). However, Plaintiff does not address Defendant's claim that Defendant might have materially changed its strategy over the course of the extensive discovery in this case if Defendant had been timely advised of the Franklyn Surveys. Because the burden is on Plaintiff to

establish that its failure to timely disclose the Franklyn Surveys was substantially justified or harmless, the Court finds that Plaintiff has failed to assuage the concern of potential prejudice to Defendant in this case. Thus, the Court will exercise its discretion to preclude the use of the Franklyn Surveys.

IV. **CONCLUSION**

For the reasons explained above, it is **ORDERED** that Defendant's motion to strike portions of Plaintiff's expert report (Doc. 51) is **GRANTED**. Sections IX–XIV of the Franklyn Report (Doc. 51-1) are **STRUCK**.

**DONE** and **ORDERED** in Orlando, Florida, on May 5, 2025.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

9