## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

X SOCIAL MEDIA LLC,

        Plaintiff,

v.

X CORP.,

        Defendant.

Case No. 6:23-CV-01903-JA-NWH

## DEFENDANT'S MOTION FOR SANCTIONS UNDER RULE 37

Defendant X Corp. seeks judicial intervention to prevent Plaintiff from relying on documents it produced just hours before the *Daubert* motion deadline and over a month after the discovery cutoff—a practice emblematic of Plaintiff's conduct throughout this case. From the outset, Plaintiff's litigation conduct has been dilatory—not only to X Corp.'s disadvantage, but oftentimes in direct violation of the Federal Rules of Civil Procedure, the Local Rules of the Middle District of Florida, and this Court's orders.[1] Throughout this case, X Corp. has time after time accommodated Plaintiff's delay to avoid burdening the Court, but—given that Plaintiff's tactics have continued and are prejudicing Defendant—Defendant has been left with no choice but to file the instant motion. Accordingly, the Court should prevent Plaintiff from prejudicing Defendant by precluding Plaintiff's use of untimely disclosed documents.[2]

---

[1]     *See supra* note 6; *see also supra* p. 21.

[2]     Plaintiff's untimely June 4 production consisted of eight documents. All eight documents are subject to exclusion as untimely, having been served after the close of discovery. While Defendant maintains that all the documents produced by Plaintiff on June 4 are excludable under Rule 37,

An issue in this case for which Defendant pursued discovery is whether the Facebook advertisements that Plaintiff creates for its law firm clients include Plaintiff's X SOCIALMEDIA name or logo. Defendant explicitly asked two of Plaintiff's key witnesses during depositions (its CEO, Jacob Malherbe, and the employee responsible for creating the at-issue documents, Aaron Vaaler) whether such advertisements existed—both witnesses testified they did not. Defendant also served Rule 34 requests for production, to which Facebook advertisements including Plaintiff's name or logo would have been responsive, but none were produced during discovery. Nevertheless, Plaintiff's expert, David Franklyn, purported to rely on documents depicting Facebook advertisements with Plaintiff's logo in support of his opinions. Plaintiff did not disclose those documents with its expert report, and Defendant did not have the opportunity to question Franklyn about their import.

On June 4, 2025, 120 days after Plaintiff's rebuttal expert report was served, 34 days after the close of discovery, and less than 5 hours before *Daubert* motions were due, Plaintiff belatedly produced documents purporting to show Facebook advertisements that include Plaintiff's name and logo—the same documents that Plaintiff's witnesses said did not exist and which Plaintiff did not produce in response to Rule 34 requests or with its expert disclosure.

---

Defendant recognizes that some of the documents are substantially similar to documents already in the record, minimizing the prejudice which would result from the untimely production. As such, Defendant's present motion only seeks exclusion of XSM0232851, XSM0232852, XSM0232853, and XSM0232854, attached hereto as Exhibits 17 through 20, respectively, which are documents that Plaintiff had never produced to Defendant during the discovery period and which Plaintiff's witnesses testified did not exist.

Defendant reasonably relied on the absence of these types of advertisements in crafting its expert reports, case strategy, motion for summary judgment, and *Daubert* motion. Plaintiff had ample time to produce the at-issue advertisements—whether in response to Defendant's discovery requests served over a year ago, in response to direct questioning at several depositions, in any of its 18 document productions, or in its expert disclosure—yet Plaintiff waited until June 4, 2025, after discovery had closed and expert reports had been submitted, and hours before dispositive and *Daubert* motions were due, to first produce any such advertisements (in an eleventh hour attempt to cure the unsupported opinions in the Franklyn Report).

Plaintiff's belated production violates both Rule 26 (which requires timely supplementation of responses to discovery requests and producing expert reports containing the facts and data considered by the expert in forming their opinions) and this Court's Scheduling Order. *See* Fed. R. Civ. Proc. 26; Docs. 36, 53. Plaintiff's failure is neither substantially justified nor harmless, and sanctions are appropriate under Rule 37. *See* Fed. R. Civ. Proc. 37. The absence of Plaintiff's name or logo from the Facebook advertisements Plaintiff creates for its law firm clients was a central issue in Defendant's *Daubert* motion (*see, e.g.*, Doc. 88 at 6-9, 11, 20-22), has been a significant aspect of Defendant's litigation strategy, and was repeatedly confirmed by Plaintiff's witnesses; if Plaintiff's belatedly produced documents are not excluded, Defendant will be denied the opportunity to understand and test the veracity of what the documents purport to show.

X Corp. seeks an order precluding Plaintiff from relying on the Facebook

advertisements produced by Plaintiff which purport to include Plaintiff's name and logo—documents bearing Bates stamps XSM0232851, XSM0232852, XSM0232853, and XSM0232854, attached hereto as Exs. 17 through 20, respectively.[3] Defendant further seeks an order requiring that Plaintiff reimburse Defendant's reasonable expenses, including attorneys' fees, associated with bringing this motion.

## BACKGROUND

### I.    Plaintiff's Services

Plaintiff filed the Complaint in October 2023, alleging a likelihood of confusion between Plaintiff's use of X SOCIALMEDIA in connection with advertising services, and Defendant's use of X on its social networking platform. Doc. 1. Plaintiff provides advertising services in the form of lead generation campaigns for mass tort cases and currently employs only five full-time employees. Ex. 1 at 16:10-17:4, 22:6, 25:23-26:1, 39:2-21. Plaintiff's target clients are primarily lawyers and law firms that bring class action lawsuits. Ex. 1 at 80:15-19; Ex. 2 at 123:21-124:22; Ex. 3 at 11:10-11.

Plaintiff predominantly utilizes Facebook for the marketing campaigns that it creates. Since its inception, Plaintiff has created and published hundreds of legal marketing campaigns (including over 200 campaigns in 2024 alone). Ex. 4 at 33:2-20. A significant part of Plaintiff's business involves the creation, design and implementation of advertisements that appear on Facebook to recruit class-action plaintiffs for Plaintiff's law firm clients. Ex. 1 at 30:9-31:5, 41:23-42:7; Ex. 3 at 65:16-

---

[3]    All references to Ex. _ refer to exhibits attached to the Declaration of Jared I. Kagan in Support of Defendant's Motion for Sanctions Under Rule 37, filed contemporaneously herewith.

66:10. Based upon the documentary record and the deposition testimony of Plaintiff's fact witnesses, the campaign advertisements that appear on Facebook never include Plaintiff's branding. Ex. 1 at 148:19-149:20; *see also* Ex. 3 at 66:11-20; Exs. 8 through 14. Those Facebook advertisements also link to an external website, called "landing pages," which provide more information on class action opportunities and provide questionnaires for potential plaintiff intake and evaluation. Ex. 1 at 57:21-25, 58:8-59:9. The vast majority of the landing pages Plaintiff creates do not contain any reference to Plaintiff. *See, e.g.*, Exs. 26 through 28. Plaintiff has, however, produced images for a single campaign that appear to contain Plaintiff's logo in the bottom footer of the external landing page. *See, e.g.*, Exs. 21 through 23.

## II.    Discovery Schedule

Discovery in this matter began in January 2024. On January 19, 2024, the parties submitted a joint proposed Case Management Report (Doc. 35), which resulted from extensive negotiation between the parties (through both e-mail and during the parties' Rule 26(f) planning conference). That report proposed the following deadlines (Doc. 35 at Secs. 2, 9(c)):

- Substantial completion of document discovery by **September 6, 2024**;

- Fact depositions and other remaining factual discovery completed by **October 23, 2024**;

- Plaintiff affirmative expert reports by **October 25, 2024**;

- Defendant affirmative and/or rebuttal expert reports by **December 6, 2024;**

- Plaintiff rebuttal expert reports by **January 21, 2025**; and

- Close of all discovery by **April 2, 2025**.[4]

The Court then entered a Case Management and Scheduling Order ("Scheduling Order"), adopting the parties' proposed deadlines for expert disclosures and the close of all discovery.[5] Doc. 36.

Over the course of this litigation, X Corp. has complied with court-ordered deadlines, and frequently accommodated Plaintiff's extension requests.[6] Relevant to this motion, Plaintiff sought and received an unopposed extension of its deadline to produce its expert rebuttal report to February 4, 2025. Doc. 49. Plaintiff also informally requested, and X Corp. consented to, an extension until February 7 for the production of the underlying data associated with Plaintiff's expert report. *See* Ex. 6.

## III.  Fact Discovery

On March 26, 2024, Defendant served its first set of Requests for Production ("RFP"). *See* Ex. 5. Plaintiff's Facebook ads were responsive to numerous RFPs. *See, e.g.*, *id.* at Nos. 13, 15, 16, 26. On May 2, 2024, Plaintiff made a small first document

---

[4]    The close of all discovery was later extended to May 2, 2025 due to illness of Plaintiff's lead counsel. Doc. 53.

[5]    The Scheduling Order did not include the parties' proposed dates for the substantial completion of document discovery, and it did not set separate deadlines for the close of fact and expert discovery. The parties agreed to substantially complete production by September, 6, 2024, a deadline which Defendant met. Plaintiff did not claim to be substantially complete with its document production until December 9, 2024.

[6]    By way of background only, in the fifteen-plus months of discovery, Plaintiff sought and Defendant consented to extensions of deadlines for serving (i) the Joint Case Management Report; (ii) Responses to Defendant's First Set of Requests for Production; (iii) Responses to Defendant's First Set of Interrogatories; (iv) substantial competition of document production; (v) production of Plaintiff's privilege log; (vi) expert rebuttal reports; (vii) appendices and data underlying Plaintiff's expert report; and (viii) Plaintiff's Opposition to Defendant's Motion to Strike.

production of approximately 100 documents from a self-collection by Plaintiff's CEO. That production did not include any of the Facebook campaign advertisements Plaintiff creates for its law firm clients. This first production also did not include any internal communications or correspondence with its law firm clients. Plaintiff took the position that it was complete with its document production at that time. However, in response to several deficiencies identified by Defendant, and a lengthy conferral process, Plaintiff agreed to collect inboxes and apply search terms, as the parties had agreed in an ESI Protocol.

Between October 24, 2024, and May 2, 2025 Plaintiff made 17 supplemental productions, largely a result of Defendant's continued demands.[7] It was not until February 2025—eleven months after Defendant's Rule 34 requests—that Plaintiff produced *any* of the design assets it had created for its clients.[8] None of Plaintiff's document productions during the discovery period included a single Facebook

---

[7]    On April 23, 2025, a week and a half before the close of discovery, Plaintiff's counsel admitted for the first time that it had its own concerns with its document collection efforts that it hoped to cure by hiring a vendor, re-collecting documents, re-running search terms, and re-reviewing documents so that it could get its document productions to a "defensible level," because entire folders of documents were missing from its initial collection efforts. Given discovery was about to close, Defendant opted not to file a motion to compel. Notably however, on May 2, 2025, on the last day of discovery, and after all but one of the parties' depositions were complete, Plaintiff made four additional document productions, including one after 11:30PM EDT—thirty minutes before the close of discovery. All of those last-minute productions failed to address many of the prior deficiencies identified by Defendant (and further admitted by Plaintiff)—and did not include any of the documents at issue in the instant motion. Plaintiff's last-minute effort to produce several document productions in the waning moments of the lengthy discovery period demonstrates Plaintiff's awareness that it would not have been proper to produce documents after that date.

[8]    Specifically, on February 13, 2025, Plaintiff served a small document production which consisted of landing pages (not Facebook advertisements) that related to a single campaign to recruit potential class action plaintiffs for gaming addiction claims ("Gaming Addiction Campaign"). Importantly, the landing pages are external to Facebook, and would not be seen by consumers scrolling on Facebook where the campaign advertisements Plaintiff creates appear.

advertisement created by Plaintiff for its clients that contained either its name or logo.

During the discovery period, Plaintiff repeatedly provided testimony and evidence indicating that Plaintiff's logo was not used on the Facebook advertisements that it creates for its clients. On February 4, 2025, Plaintiff's CEO, Jacob Malherbe, testified at a deposition that Facebook ads "*never*" contain Plaintiff's name or logo. Ex. 1 at 149:9-20. On February 5, 2025, Plaintiff's Director of Client Operations, Samuel Clark, testified that Plaintiff's employee, Aaron Vaaler, was solely responsible for creation of these Facebook advertisements, which were also referred to as "copy," "social media ads," and "creatives." Ex. 4 at 18:19-19:7.

As Plaintiff had still not produced any of the Facebook advertisements it creates and discussed at these depositions—and even though these advertisements were responsive to earlier discovery requests (*see* Ex. 5, Nos. 13, 15, 16, 26)—X Corp. sent follow-up discovery requests for the "ad creatives" and "ad copies" Plaintiff creates for its clients. Ex. 7 at 10 (regarding RFP No. 13). On February 26, 2025, having not heard from Plaintiff or received additional productions of advertisements, X Corp. asked Plaintiff to confirm it was searching for "ad creative and ad copies created by XSM's creative department." *Id.* at 1 (regarding Documents). Plaintiff confirmed via email on March 28, 2025 that documents responsive to the request for ad copies and ad creatives would be produced. Finally, on March 28, 2025, Plaintiff produced Facebook advertisements it had created, but *none* of the ad copies produced contained Plaintiff's name or logo, further confirming Malherbe's testimony. *See* Exs. 8 through 14.

Following this production, on April 7, 2025, X Corp. deposed Plaintiff's Creative Director, Aaron Vaaler, who, as Mr. Clark explained, is the sole employee responsible for designing Facebook ads for Plaintiff's clients. Ex. 4 at 19:1-7. Mr. Vaaler confirmed Mr. Malherbe's testimony that Facebook ads created by Plaintiff *never* identify Plaintiff. Ex. 3 at 66:15-20.

## IV.    Expert Discovery

Plaintiff served (an incomplete version[9] of) the expert report of David Franklyn (the "Franklyn Report") on February 4, 2025, which purported to rebut Defendant's experts. In his report, Franklyn opined that "secondary consumers" (*i.e.*, ordinary, non-law firm individuals) interact with Plaintiff's mark, services, and logo insofar as they are exposed on Facebook to the materials Plaintiff creates for the campaigns of its law firm clients. *See* Ex. 15 at 25-26, 40-41. The Franklyn Report did not identify, cite to, or describe any *Facebook ads* on which Franklyn purportedly relied.

On May 9, 2025, to accommodate Franklyn's schedule (despite Defendant asking for Franklyn's availability in February 2025, and its best efforts to have all depositions complete by the May 2, 2025 discovery deadline), Defendant deposed Franklyn. Contrary to Mr. Malherbe's and Mr. Vaaler's testimony, Franklyn testified that he had seen and relied on Facebook ads that displayed Plaintiff's name, but he did not identify any of these documents in his report. *See* Ex. 16 at 40:1-21. Specifically, Franklyn represented that he had seen "50-something pictures of ads" and an

---

[9]    As explained, *supra* p. 6, n.6, Plaintiff served the Franklyn Report without the underlying data, which followed days later, at Plaintiff's request. *See also* Ex. 6.

"aggregate group" of advertisements that were furnished to Franklyn by Plaintiff's counsel. *Id.* at 50:21-51:13, 68:2-7. Franklyn represented that he was going to collect and get the documents referenced to counsel for Defendant "either before the deposition [was] over or shortly thereafter." *Id.* at 184:14-25. Defendant's counsel noted on the record such late production was "improper," particularly given that "[Defendant was] deposing [him], and it ha[d] not been disclosed to [Defendant]." *Id.* at 185:1-6. Plaintiff did not produce any documents either during the deposition or shortly thereafter.

## V.    Plaintiff's June 4, 2025 Production

On June 3, 2025, during the parties' meet and confer for upcoming *Daubert* motions (which were due on June 4, 2025), Plaintiff represented for the first time that it intended to produce documents, either later that day or the following, which it alleged Franklyn relied on in forming his opinions (nearly 4 months after serving the Franklyn Report, more than one month after the close of fact discovery, and nearly one month after the Franklyn deposition). Counsel for Defendant informed counsel for Plaintiff that such a belated production would be improper.

At 7:06 PM EDT on June 4, 2025, less than five hours before *Daubert* and summary judgment motions were due, Plaintiff produced eight documents, on which Franklyn purportedly relied in forming his opinions.[10] These documents included, in

---

[10]    Notably however, because the content of many of those untimely produced documents post-date Franklyn's report and were otherwise not disclosed, Franklyn could not have possibly relied on them. Indeed, even though Plaintiff represented to Defendant during the parties' June 3, 2025 meet and confer that the forthcoming belated documents were the ones Franklyn discussed at his deposition

part, documents which appear to be Facebook ads for Plaintiff's "Gaming Addiction Campaign" that include Plaintiff's name and logo. *See* Exs. 17 through 20. Plaintiff launched the "Gaming Addiction Campaign" on Facebook on September 5, 2024, accompanied by a photo advertisement that lacked Plaintiff's logo and branding.[11] On December 17, 2024, the Facebook page associated with the "Gaming Addiction Campaign" posted what purports to be a Facebook ad created by Plaintiff which includes Plaintiff's logo. *See, e.g.*, Ex. 17. Despite the belatedly produced documents being in Plaintiff's possession well before the close of discovery, and with pending discovery requests to which they would have been responsive, Plaintiff did not timely produce the documents at issue.

Prior to June 4, 2025, Plaintiff produced no Facebook ads with Plaintiff's name or logo, and aside from its expert's say-so on May 9, 2025, affirmatively represented that no such ads existed. The belatedly-produced Facebook advertisements (Exs. 17

---

as having relied on, Franklyn did not, and has not, identified these specific documents as being considered in forming his rebuttal opinions.

[11]    Even in Plaintiff's attempt to shore up its deficient document production one month after the discovery deadline, it significantly falls short. Plaintiff's production omits much of the content on the "Gaming Addiction Claim" Facebook page. Plaintiff's production is further missing the relevant, and required, metadata for the documents, pursuant to the parties' ESI Protocol. However, Defendant was able to confirm that the Facebook page for the Gaming Addiction Campaign is accessible at https://www.facebook.com/GamingAddictionClaim and has appended that page in full. *See* Ex. 24. The "About" tab lists a creation date of September 5, 2024. *See* Ex. 25. It further appears that Plaintiff has cherry picked favorable sections of the Facebook page to screenshot and produce while omitting others. For example, the first image shared on the page (on September 5, 2024) does not include Plaintiff's name or logo. *See* Ex. 24 at 14. Interestingly, Plaintiff's name and logo did not appear on an image posted on that Facebook page until the December 17, 2024 post, a change which happened to occur shortly after Defendant served its expert reports on December 6, 2024, which criticized Plaintiff's theory of customer confusion based on its lack of advertising to non-law firm clients. Because Defendant did not have these documents at the time it took depositions, Defendant was unable to examine Plaintiff's witnesses about the suspicious sequence of these events.

through 20), or any documents similar in kind, were not cited in the Franklyn Report, could not be identified by Franklyn at his deposition, and contradict prior testimony of Plaintiff's witnesses (on which Defendant relied in its Summary Judgment and *Daubert* motions). *See* Docs. 83, 88.

## LEGAL STANDARD

Rule 26(a) mandates disclosure of "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. Proc. 26(a). Further, Rule 26(a) requires that expert reports contain: (i) "a complete statement of all opinions the witness will express and the basis and reasons for them;" (ii) the "facts or data considered by the [expert] in forming [their testimony]" and (iii) "any exhibits that will be used to . . . support [their testimony]." Fed. R. Civ. Proc. 26(a)(2)(B)(i-iii); *see also*, *Monte v. Sherwin-Williams Dev. Corp.*, No. 6:23-cv-288, 2025 WL 90119, at *4 (M.D. Fla. Jan. 14, 2025) (granting motion for exclusion under Rule 37 for untimely disclosure).

Rule 26(e) requires parties to supplement all disclosures "in a timely manner" when a party learns that its disclosure or response is incomplete or incorrect in a material respect, and the corrective information was not otherwise known. Fed. R. Civ. Proc. 26(e)(1)(A). If a party fails to timely disclose information required by Rule 26(a) or (e), Rule 37(c) provides for sanctions. Fed. R. Civ. Proc. 37(c)(1).

District courts have broad discretion to impose appropriate sanctions for discovery abuses. Fed. R. Civ. Proc. 37; *see also Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). Sanctions under Rule 37 include precluding a party from using late

12

information on a motion, hearing, or a trial, unless the failure to timely disclose was "substantially justified or harmless." Fed. R. Civ. Proc. 37(c)(1). The moving party is not required to demonstrate that the offending party acted in bad faith. *J.G. v. Northbrook Indus.*, Inc., No. 1:20-cv-05233, 2024 WL 4513034, at *16 (N.D. Ga. Aug. 16, 2024) (citations omitted). Instead, "[t]he party who violated Rule 26 bears the burden of establishing its noncompliance was substantially justified or harmless." *See Dero Roofing, LLC v. Triton, Inc.*, 344 F.R.D. 566, 573 (M.D. Fla. 2023).

In addition to exclusion, the court, "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" or other appropriate sanctions. Fed. R. Civ. Proc. 37(c)(1)(A). Both the Scheduling Order and Order on Discovery Motions in this case further made clear that failure to comply Court-ordered deadlines, or other related discovery misconduct, was sanctionable, including, but not limited to, "an award of reasonable attorney's fees and costs." Doc. 16 at 2; Doc. 36 at 10-11.

## ARGUMENT

Consistent with Rule 37 and this Court's Scheduling Order, the Court should exclude XSM0232851, XSM0232852, XSM0232853, and XSM0232854, and preclude Plaintiff and its expert, Franklyn, from relying on these documents including in a motion, hearing, or trial. Plaintiff's June 4 production is undisputedly untimely, and allowing Plaintiff to rely on the at-issue documents contained therein will prejudice Defendant at this advanced stage of litigation. The only viable remedy for Plaintiff's late production is to exclude these documents. Defendant also is entitled to an award

of reasonable expenses, including its attorney's fees expended in connection with bringing this motion.

## I.    Documents in Plaintiff's Belated June 4 Production Should be Excluded.

### A.    Plaintiff violated Rule 26.

Plaintiff's June 4 production was untimely under the Court's Scheduling Order, under the deadlines for both fact discovery and expert reports, and violates Rules 26(a) and (e). There can be no dispute that the documents produced were under Plaintiff's custody and control throughout the discovery period. Plaintiff had these documents at least as early as December 17, 2024—when the Facebook post was created—prior to serving Franklyn's rebuttal report on February 4, 2025, and significantly before the close of fact discovery on May 2, 2025. *See* Ex. 17. Plaintiff failed to initially disclose and subsequently supplement its disclosures with these documents which Defendant requested, and Defendant justifiably believed that no such documents existed given the sworn testimony of Plaintiff's multiple fact witnesses. Additionally, Franklyn purportedly relied on these undisclosed documents, so Plaintiff should have produced them at least at the same time Franklyn produced his report. Without explanation, Plaintiff untimely disclosed these documents on June 4, 2025. *See e.g., Tinley v. GEICO Gen. Ins. Co.*, No. 6:23-cv-312, 2023 WL 9690071, at *3 (M.D. Fla. Dec. 14, 2023) (finding untimely supplementation of expert disclosures to violate both Rule 26 and the court's operative scheduling order); *see also Monte*, 2025 WL 90119, at *4 (explaining that a supplemental expert report is excludable under Rule 37(c) if it is not filed before the deadline imposed).

14

Discovery deadlines are important to move a case forward and establish a fixed set of evidence for trial. *See Edwards v. Nat'l Vision, Inc.*, 946 F. Supp. 2d 1153, 1160 (N.D. Ala. 2013), *aff'd*, 568 Fed. Appx. 854 (11th Cir. 2014) ("The procedural and discovery rules were not put in place to be ignored."). But Plaintiff ignored discovery deadlines set by this Court without explanation, and untimely produced the at-issue documents after the close of discovery and on the evening *Daubert* motions were due.

When litigants are not diligent in locating and producing documents, they are appropriately sanctioned, including preclusion from reliance on the late-disclosed documents. *See, e.g.*, *U.S. All Star Fed'n, Inc. v. Open Cheer & Dance Championship Series, LLC*, No. 6:21-cv-2135, 2023 WL 8234588, at *1 (M.D. Fla. Nov. 28, 2023) (granting motion to preclude reliance on, and introduction into evidence of, 50 late-disclosed documents, produced after the discovery deadline and purportedly relied on by the producing party's expert in forming her opinions); *Zurich Am. Ins. Co. v. Hardin*, No. 8:14-cv-775, 2020 WL 1150981, at *2-3 (M.D. Fla. Mar. 10, 2020) (precluding reliance on documents not produced during fact discovery, particularly where depositions occurred and expert reports were prepared in their absence, and imposing monetary sanctions, including attorney's fees, incurred because of the discovery violation).

A party's failure to disclose information "as required by Rule 26 is . . . governed by Federal Rule 37(c)." *See DeRose v. Scottsdale Ins. Co.*, No. 1:22-cv-20784, 2022 WL 19829367, at *2 (S.D. Fla. Nov. 14, 2022). The purpose of Rule 37's exclusionary sanction is to prevent the non-disclosing party from gaining an unfair tactical advantage. *See id.* ("[Rules 26 and 37] are intended to permit both sides adequate time

to prepare arguments and rebut counterparty's; thus, where a failure to disclose is unjustified, Rule 37's prohibitions are applied strictly."). Plaintiff neglected its duties under Rule 26, even after Defendant agreed to scheduling extensions. *See Dero Roofing, LLC*, 344 F.R.D. at 575 (M.D. Fla. 2023) (after several opportunities to cure deficiencies and still not complying with Rule 26, Plaintiff's expert testimony was excluded). Compliance with Rule 26 is not merely aspirational, *id.* at 573 (citation omitted), and consequently, Plaintiff should be precluded from relying on the at-issue documents in its belated June 4 production.

### B.    Plaintiff's violation of Rule 26 was not substantially justified.

Plaintiff cannot show that its actions were substantially justified. Failure to comply with Rule 26 is "substantially justified when a reasonable person would be satisfied that the parties could differ as to whether the party was required to comply with the disclosure request." *Tinley*, 2023 WL 9690071, at *3 (citation omitted). "The proponent's position must have a reasonable basis in law and fact," and there must be a "genuine dispute concerning compliance." *Id.* There is no genuine dispute concerning Plaintiff's non-compliance. Plaintiff is a five-person company with one employee responsible for creating the content in question. Ex. 1 at 16:25-17:4; Ex. 3 at 66:15-20. There is no doubt that Plaintiff was aware of the at-issue documents, which all come from a campaign that it was actively publishing, during the discovery period. This is especially true, particularly given Franklyn's claims that he was first contacted by Plaintiff's counsel in Fall 2024 and further testified that he had reviewed the

documents at issue "months ago." Ex. 16 at 71:11-23. Plaintiff was obligated to locate and disclose these materials in a timely manner.

Instead, Plaintiff produced contradictory Facebook ads without Plaintiff's name or logo, and its deponents testified that Facebook ads with Plaintiff's name and logo do not exist. *See* Exs. 8 through 14; *see also* Ex. 1 at 149:9-20; Ex. 3 at 66:15-20. When Plaintiff finally made its June 4 production, it provided no explanation as to how it suddenly became aware of these documents or why it took so long to produce them. Reasonable minds cannot differ that this conduct is not justifiable.

### C.   Plaintiff's violation of Rule 26 was not harmless.

The burden falls on Plaintiff to "establish[] that a failure to disclose was . . . harmless." *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 662 (M.D. Fla. 2012), *citing Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009). Plaintiff cannot do so.

The concept of "harmless" is fairly limited to honest mistakes coupled with sufficient knowledge on the part of the other party. *Rembrandt Vision Techs., L.P.*, 282 F.R.D. at 662 (M.D. Fla. 2012) (citation omitted) ("Illustrative examples are late disclosures of a potential witness known to all parties, a trial witness already listed by the adverse party, or a witness on behalf of a pro se litigant ignorant of the requirement."). When considering whether a Rule 26 violation is harmless, courts generally consider the surprise to the party against whom the evidence would be offered; the ability of that party to cure the surprise; the extent to which allowing the evidence would disrupt the trial; the importance of the evidence; and the non-

disclosing party's explanation for its failure to disclose the evidence. *Houston Specialty Ins. Co. v. Vaughn*, No. 8:15-cv-2165, 2017 WL 11415009, at *4 (M.D. Fla. Aug. 23, 2017), *aff'd*, 763 F. App'x 853 (11th Cir. 2019). These factors weigh in favor of finding Plaintiff's conduct was not harmless.

Defendant was surprised by the late production of new evidence that contradicted documentary and testimonial evidence provided up to that point. "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Martin-Viana v. Royal Caribbean Cruises Ltd.*, 733 F. Supp. 3d 1308, 1322 (S.D. Fla. 2024) (citation omitted); *see also DeRose*, 2022 WL 19829367, at *3 (describing "Defendant's inability to explore [the documents] in deposition" and the fact that Defendant "had premised several of its [] arguments" on deposition testimony contrary to the documents as "important to the Court"). Defendant is prejudiced because it was denied any meaningful opportunity to consider these documents when deposing witnesses, drafting core arguments in its *Daubert* motion, or drafting its motion for summary judgment. In fact, Defendant conducted all of its depositions, strategized, mounted its defenses, crafted expert reports, and critiqued Plaintiff's expert based on the universe of documents Plaintiff had produced prior to the close of discovery.

Not only did Plaintiff deprive Defendant of any meaningful opportunity to consider and rebut these newly produced documents, Plaintiff's CEO and the employee responsible for the creation of Facebook ads both testified that no such

documents existed. Defendant served follow-up discovery requests seeking Facebook advertisements that Plaintiff had created, and Plaintiff produced no ads with Plaintiff's name or logo in response. It is surprising and prejudicial for these documents to suddenly materialize at an advanced stage of litigation. In line with Circuit precedent, dilatory and prejudicial disclosures weigh in favor of finding Plaintiff's actions are not harmless. *See e.g.*, *Young v. Lexington Ins. Co.*, 269 F.R.D. 692, 694-695 (S.D. Fla. 2010) (ordering sanctions in the form of exclusion of untimely expert opinions where deadline for filing *Daubert* motions had passed and discovery deadline was 10 days away); *Derosier v. BP Corp., N. Am. Inc.*, No. 05-cv-81020, 2007 WL 9706925, at *2 (S.D. Fla. Feb. 6, 2007) (finding sanctions appropriate based on plaintiff's "clear record of delay and willful disregard of their discovery obligations, the rules of procedure and orders of court").

Plaintiff's discovery violations cannot be cured. Defendant does not have an opportunity to effectively amend its litigation strategy at this advanced stage. This is not a case where an expert is merely being permitted to "supplement, elaborate upon, and explain his report in his oral testimony." *Rembrandt Vision Techs., L.P.*, 282 F.R.D. at 663 (citation omitted). Here, Plaintiff produced documents that, in part, purportedly formed the basis for Franklyn's expert opinion but that also contradict testimony from Plaintiff's own fact witnesses. This scenario creates an unbalanced landscape to which only Plaintiff has access to key documents supporting its arguments and expert's testimony. With discovery closed, if the belatedly produced Facebook advertisements

are not excluded, Defendant's only option is to be ambushed with unknown testimony about these new documents at trial.

Defendant reasonably relied on the record evidence that did not include these documents. The Court cannot cure the prejudice to Defendant by extending a deadline or amending the case schedule given the substantial progress of this litigation (*i.e.,* close of all discovery, submission of X Corp.'s Motion for Summary Judgment, submission of parties' *Daubert* motions, etc.). Allowing Plaintiff to rely on this evidence would require the reopening of three depositions—in particular, the depositions of Malherbe and Vaaler to investigate why they testified no such documents existed, where else the documents were posted, the reach of the advertisements, whether the advertisements were widely promoted or viewable only by subscribers to the specific Facebook page, when Plaintiff started putting its name and logo on Facebook advertisements, and why Plaintiff suddenly changed its typical conduct of not including its name or logo on Facebook advertisements, as well as the deposition of Franklyn to test his critiques in light of the actual documents he relied upon. Additionally, Defendant would need to analyze and address this new information in briefing, which is already complete, and potentially update its expert reports (formed in the absence of these documents), all during the time trial preparation is ongoing. The only viable path to cure Plaintiff's unfair advantage is to exclude these documents.

Plaintiff has offered no explanation for its delay, let alone one sufficient to support a finding of harmlessness. Plaintiff bears the burden to establish that its actions are not harmless, and it has not and cannot do so. Plaintiff's June 4 disclosure of

XSM0232851, XSM0232852, XSM0232853, and XSM0232854 was not justified or harmless and thus, those documents should be excluded.

## II.  Defendant is Entitled to Reasonable Attorney's Fees and Costs.

In addition to excluding the at-issue documents in Plaintiff's June 4 production, monetary sanctions are available under Rule 37 and are appropriate here. *See, e.g.*, *Fanelli v. BMC Software, Inc.*, No. 1:11-cv-436, 2015 WL 13122473, at \*4 (N.D. Ga. Apr. 29, 2015) (sanctions under Rule 37(c)(1)(A) appropriate and non-disclosing party ordered to pay reasonable attorney's fees incurred as a result of non-disclosing party's failure to timely produce documents); *Houston Specialty Ins. Co.*, 2017 WL 11415009, at \*6; *Hardin*, 2020 WL 1150981, at \*3.

Plaintiff's dilatory tactics have intensified during this case, which is why Defendant has sought the Court's intervention several times in the last few months. Notably, Defendant has been forced to incur significant cost and expend resources to address Plaintiff's: (i) untimely disclosure of Franklyn's affirmative opinions (in violation of this Court's Scheduling Order (Doc. 36) and Rule 26 (Docs. 51, 60); (ii) untimely, meritless attempt to amend its Complaint and extend discovery (Doc. 62); (iii) untimely and improper attempt to notice the deposition of Defendant's former employee (in violation of Local Rule 3.04) (Doc. 76); (iv) untimely and improper attempt to notice the deposition of Defendant's chairman and CTO after the conclusion of the discovery period (in violation of this Court's Scheduling Order (Doc. 36) and the apex doctrine (as explained in Doc. 68)); and (v) frivolous motion for reconsideration of the Court's Order on Defendant's Motion to Strike (Doc. 81).

Litigants "cannot escape sanctions by providing documents at the eleventh hour," and where discovery issues have been protracted, "it is not the court's role, nor that of opposing counsel, to drag a party kicking and screaming through the discovery process." *Keen v. Bovie Med. Corp.*, No. 8:12-cv-305, 2013 WL 12158121, at *3 (M.D. Fla. July 9, 2013) (citation and quotation omitted).

Thus, in addition to excluding XSM0232851, XSM0232852, XSM0232853, and XSM0232854, X Corp. respectfully requests this Court order Plaintiff to reimburse Defendant's reasonable attorney's fees and costs caused by its late disclosure, including bringing this motion.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court exclude XSM0232851, XSM0232852, XSM0232853, and XSM0232854 and preclude Plaintiff and its expert, Franklyn, from relying on these documents. In addition, Defendant respectfully requests that this Court order Plaintiff to reimburse Defendant's reasonable expenses, including attorney's fees, attributable to Plaintiff's failure to comply with Rule 26, and Defendant's costs incurred in bringing this motion.

## LOCAL RULE 3.01(g) CERTIFICATION

On June 23, 2025, counsel for the parties conferred via videoconference on the issues raised and relief sought herein. Plaintiff intends to oppose the relief sought.

Respectfully submitted this 25th day of June, 2025.

|  | _/s/ Megan K. Bannigan_ |
|---|---|
| Dustin Mauser-Claassen | Megan K. Bannigan (Lead Counsel)* |
| Florida Bar No. 0119289 | David H. Bernstein* |
| Quinn B. Ritter | Jared I. Kagan* |
| Florida Bar No. 1018135 | Nicole M. Flores* |
| KING, BLACKWELL, ZEHNDER, | Debevoise & Plimpton LLP |
| & WERMUTH, P.A. | 66 Hudson Blvd |
| 25 E. Pine St. | New York, NY 10001 |
| Orlando, FL 32801 | Telephone: (212) 909-6000 |
| Telephone: (407) 422-2472 | mkbannigan@debevoise.com |
| dmauser@kbzwlaw.com | dhbernstein@debevoise.com |
| qritter@kbzwlaw.com | jikagan@debevoise.com |
|  | nmflores@debevoise.com |
|  | *Admitted pro hac vice* |

Counsel for Defendant, X Corp.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on June 25, 2025, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send

a notice of electronic filing to all counsel of record.

/s/ *Dustin Mauser-Claassen*
Dustin Mauser-Claassen
Florida Bar No.: 0119289