**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

X SOCIAL MEDIA LLC,

    Plaintiff,

v.                                                 CASE NO. 6:23-cv-1903-JA-NWH

X CORP.,

    Defendant.

## ORDER

This case is before the Court on Defendant, X Corp.'s motion for sanctions (Doc. 97), Plaintiff, X Social Media LLC's response (Doc. 116), and Defendant's reply (Doc. 126). Based on the Court's review of the parties' submissions, the motion must be granted in part and denied in part.

### I.   BACKGROUND

Plaintiff is an advertising agency that conducts ad campaigns on social media to help its law-firm clients recruit class-action and mass-tort plaintiffs. (Doc. 98-1 at 30:9–31:5, 41:23–42:7; Doc. 98-3 at 65:16–66:10). Defendant owns X—formerly known as Twitter—an online and app-based communications platform that provides a forum for users to create and share a wide range of digital content, including advertisements. (Doc. 85-1 at 19:21–24; Doc. 85-6 at 58:8–14; Doc. 85-11 at 10; Doc. 85-19). Plaintiff asserts claims against

Defendant for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125, arising from Defendant's use of the "X" mark. (*See* Doc. 1).

Discovery closed on May 2, 2025, and the parties have filed *Daubert* motions. (Doc. 82; Doc. 88[1]). Additionally, Defendant has filed a motion for summary judgment (Doc. 83). In the motion for sanctions now before the Court, Defendant seeks to exclude from evidence Facebook ads that Plaintiff allegedly failed to produce during discovery. (*See* Doc. Nos. 98-17; 98-18; 98-19; 98-20).

Defendant contends that it served discovery requests broad enough to include Facebook ads that Plaintiff created for its clients that contain Plaintiff's own name and logo, but that "none of Plaintiff's document productions during the discovery period included a single Facebook advertisement created by Plaintiff for its clients that contained either its name or logo." (Doc. 97 at 7–8; Doc. 98-5 at Nos. 13, 15, 16, 26; Doc. 98-7 at 10). And Plaintiff's owner, Jacob Malherbe, and Plaintiff's employee, Aaron Vaaler, both testified in their depositions that Plaintiff's name and logo do not appear in the Facebook advertisements that Plaintiff creates for its clients. (*See, e.g.*, Doc. 98-1 at 149:9–20; Doc. 98-3 at 66:11–67:11).

The absence of these ads from Plaintiff's disclosures is a central issue in

---

[1] Defendant filed an initial *Daubert* motion (Doc. 84) and then filed a corrected motion (Doc. 88) to include a certificate of conferral pursuant to Local Rule 3.01(g). The Court refers only to Defendant's corrected *Daubert* motion (Doc. 88).

Defendant's pending *Daubert* motion to exclude the testimony of Plaintiff's rebuttal expert, David Franklyn. (Doc. 88). In his February 4, 2025 rebuttal report, Plaintiff's expert, Professor David Franklyn, opined that "secondary consumers" (i.e., potential mass-tort and class-action plaintiffs) are exposed to Plaintiff's mark when they encounter Plaintiff's ad campaigns while scrolling on Facebook. (Doc. 98-15 at 25–26). Professor Franklyn's report cited only to a "landing page"—a webpage external to Facebook that consumers are directed to after they click on Plaintiff's Facebook ad—that contained Plaintiff's mark at the bottom. (*Id.* at 25; Doc. 98-16 at 48:17–49:23; Doc. 98-21 at 5; Doc. 98-22 at 5; Doc. 98-23 at 5). But in his deposition—which was taken after his rebuttal report was produced to Defendant—Professor Franklyn testified that he had viewed Plaintiff's Facebook ad campaigns that displayed Plaintiff's mark, and he confirmed that his knowledge of the existence of those advertisements informed his opinions. (Doc. 98-16 at 40:1–21, 50:21–51:13, 53:9–55:11, 68:2–7). Professor Franklyn further explained that he did not rely on any particular ad and considered Plaintiff's landing page to be a representative example of the material that he viewed in forming his opinions. (*Id.* at 51:14–52:18, 53:9–55:1).

At the June 3, 2025 meet-and-confer conference regarding the parties' *Daubert* and dispositive motions, Defendant informed Plaintiff that Defendant would move to exclude Professor Franklyn's testimony regarding the Facebook

ads that Professor Franklyn claimed to view because those ads were not produced to Defendant during discovery. (*See* Doc. 116 at 4). The next day, Plaintiff produced four Facebook ads—which were created in December 2024 at the earliest—for Plaintiff's "Gaming Addiction Claims" campaign. (Doc. Nos. 98-17; 98-18; 98-19; 98-20) (at-issue documents).[2] The ads include Plaintiff's name and logo. (*See id.*).

Defendant argues that the at-issue documents were produced after the discovery deadline without substantial justification and are prejudicial. Defendant also seeks attorney's fees and costs because, Defendant claims, Plaintiff has engaged in a pattern of "dilatory tactics" and "frivolous" motion practice in the last few months, causing Defendant to repeatedly expend resources to seek this Court's intervention. (Doc. 97 at 21–22 (citing Docs. 51, 60, 62, 68, 76, & 81)). In its response, Plaintiff also seeks sanctions against Defendant for "misrepresenting the record." (Doc. 116 at 19).

---

[2] During the June 4, 2025 document production, Plaintiff produced a total of eight documents that Defendant contends are untimely, prejudicial, and excludable under Federal Rule of Civil Procedure 37. (Doc. 97 at 1–2 n.2). However, Defendant "recognizes that some of the documents are substantially similar to documents already in the record" and thus seeks exclusion only of the at-issue documents, which are Bates-stamped XSM0232851, XSM0232852, XSM0232853, and XSM0232854. (*Id.* (citing Doc. 98-17; Doc. 98-18; Doc. 98-19; Doc. 98-20)). In light of Defendant's representation, the Court will only address the admissibility of Docs. 98-17, 98-18, 98-19, and 98-20.

4

## II. LEGAL STANDARDS

Rule 26(a) provides in relevant part that "a party must, without a discovery request, provide to the other parties . . . a copy—or a description by category and location—of all documents . . . that the disclosing party has in its possession . . . and may use to support its claims." Fed. R. Civ. P. 26(a)(1)(A)(ii). Additionally, Rule 26(a) requires that expert reports contain: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the [expert] in forming [their opinions] and (iii) any exhibits that will be used to . . . support [their opinions]." Fed. R. Civ. P. 26(a)(2)(B)(i–iii). Moreover, Rule 26(e) provides that "[a] party who has made a disclosure under Rule 26(a)—or who has responded to . . . [a] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete." Fed. R. Civ. P. 26(e)(1)(A).

A party's failure to disclose information "as required by Rule 26 is . . . governed by . . . Rule 37(c)." *DeRose v. Scottsdale Ins. Co.*, No. 1:22-cv-20784, 2022 WL 19829367, at *2 (S.D. Fla. Nov. 14, 2022). "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and [e]nsure the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) (citing *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482

5

(11th Cir. 1982)). Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Additionally, a court "may order payment of the reasonable expenses, including attorney's fees, caused by the" late disclosure. Fed. R. Civ. P. 37(c)(1)(A).

## III. DISCUSSION

Defendant argues that Plaintiff violated Rule 26, that Plaintiff's violations were neither substantially justified nor harmless under Rule 37, and that the Court should preclude Plaintiff from relying on the at-issue documents and award Defendant its attorney's fees and costs incurred in bringing this motion. (*See generally* Doc. 97). Plaintiff responds that it did not violate Rule 26 and that, in any event, the late disclosure of the at-issue documents was substantially justified and harmless and that Defendant should be sanctioned "for misrepresenting the record." (Doc. 116 at 19–20).

### A. Whether Plaintiff Violated Rule 26

"The first step in determining whether [Rule] 37(c) sanctions are appropriate . . . is to determine whether violations of Rule 26(a) or (e) have occurred." *Berryman-Dages v. City of Gainesville*, No. 1:10CV177, 2012 WL 1130074 (N.D. Fla. Apr. 4, 2012). In positing that Plaintiff's June 4, 2025

production violated Rule 26, Defendant argues that "[t]here can be no dispute that the [at-issue documents] were under Plaintiff's custody and control throughout the discovery period." (Doc. 97 at 14). Indeed, Plaintiff began creating the at-issue documents in December 2024—nearly two months prior to serving Professor Franklyn's rebuttal report in February 2025 and several months before the close of discovery in May 2025. (*See* Docs. 98-17, 98-18, 98-19, & 98-20). Plaintiff did not initially disclose the at-issue documents or supplement its disclosures while discovery was open.

Plaintiff claims it did not violate Rule 26 because Defendant could have accessed the at-issue documents on "publicly available" Facebook pages. (Doc. 116 at 9–10). But Rule 26(a) does not exempt from its disclosure requirements documents that are available online. *See* Fed. R. Civ. P. 26(a). Plaintiff cites no authority to the contrary; thus, this argument must be rejected. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (rejecting a "conclusory argument" because the party advancing it "d[id] not explain [its] legal basis" or cite "legal authority to support it").

Plaintiff also argues that Defendant "did not ask for the[] [at-issue documents] in document requests or meet and confer correspondence." (Doc. 116 at 2). Defendant responds that its requests for: "(i) the products and services offered by Plaintiff which bear Plaintiff's mark; (ii) how Plaintiff's website

7

appears on websites and marketing materials; (iii) all ways that Plaintiff publicly uses its mark . . . and (iv) the promotion, advertising, and marketing of Plaintiff's services" are broad enough to encompass the at-issue documents. (Doc. 126 at 3 (citing Doc. 98-5 at Nos. 13, 15, 16, 26 and Doc. 98-7 at 10)). Plaintiff replies that Defendant's requests did not "seek all the Facebook pages that [Plaintiff] manages" and that had Defendant asked, Plaintiff would have pointed Defendant to the "hundreds of Facebook pages" that Plaintiff manages. (Doc. 116 at 12).

The Court finds that the at-issue documents were either responsive to Defendant's discovery requests or should have been disclosed under Rule 26(a)(1)(A). Plaintiff's assertion that Defendant did not demand the at-issue documents until the June 3, 2025 meet-and-confer conference does not excuse Plaintiff from complying with the Rule 26 disclosure requirements. (*See* Doc. 116 at 11–13). To the extent Plaintiff is arguing that Defendant's discovery requests were impermissibly overbroad, the Court rejects this argument because the time has long passed for Plaintiff to submit its objections to Defendant's discovery requests. *See* Fed. R. Civ. P. 34(b)(2)(A) and (C) (providing that "[t]he party to whom the request is directed must respond in writing within 30 days" and that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection").

8

Plaintiff also argues that Defendant only requested documents "sufficient to show" how Plaintiff publicly uses its mark and thus Plaintiff was not obligated to produce the at-issue documents. (Doc. 116 at 12 (citing Doc. 98-5 at No. 16)). But Plaintiff never produced any documents during discovery that feature Plaintiff's mark in its clients' Facebook ad campaigns. (*See, e.g.*, Docs. 98-8, 98-9, 98-10, 98-11, 98-12, 98-13, & 98-14). The ads Plaintiff produced were therefore not "sufficient to show" how Plaintiff publicly uses its mark. Thus, the Court finds that Plaintiff failed to timely disclose these documents as required by Rule 26(a) or (e).

### B. Whether Plaintiff's Late Disclosure was Harmless

Because the Court found that Plaintiff violated Rule 26, the burden shifts to Plaintiff to demonstrate that its late disclosure was "substantially justified" or "harmless" within the meaning of Rule 37(c)(1). "Failure to supplement disclosures or responses to interrogatories without substantial justification may result in exclusion of the information unless the failure is harmless." Fed. R. Civ. P. 37(c)(1). Because the Court already found that Plaintiff was not justified in its late disclosure of the at-issue documents, the Court will now assess whether Plaintiff's late disclosure was harmless.

Courts have "broad discretion" in determining whether a Rule 26 violation was harmless. *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 6:16-cv-

2001-Orl-31GJK, 2018 WL 3059995, at *6 (M.D. Fla. May 31, 2018). In considering whether a Rule 26 violation is harmless, courts assess five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Gulfpoint Constr. Co. v. Westfield Ins. Co.*, No. 2:22-cv-86, 2023 WL 3304261, at *1 (M.D. Fla. May 7, 2023) (quoting *Bendik v. USAA Cas. Ins. Co.*, No. 6:19-cv-118-Orl-41EJK, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019)). "Failure to disclose is harmless where no prejudice results to the opposing party." *Holzworth v. United States*, No. 6-09-cv-1241-Orl, 2011 WL 13298554, at *4 (M.D. Fla. May 17, 2011).

Defendant states that it was "surprised" by Plaintiff's post-discovery production of evidence that "contradicted documentary and testimonial evidence provided up to that point." (Doc. 97 at 18). Defendant explains that much of its surprise results from Mr. Malherbe's and Mr. Vaaler's testimony that the at-issue documents did not exist. (*Id.* at 18–19). Defendant argues that it was prejudiced by Plaintiff's late production of the at-issue documents because it was "denied any meaningful opportunity to consider [the at-issue documents] when

10

deposing witnesses, drafting core arguments in its *Daubert* motion, or drafting its motion for summary judgment." (*Id.*).

In response, Plaintiff asserts that during Mr. Vaaler's April 7, 2025 deposition, Defendant introduced an exhibit that appears to show Plaintiff's name and logo on a social media page titled "Game Addiction Claim." (Doc. 116-2 ¶¶ 15–16; Doc. 116-11 at 5) (Game Addiction Claim exhibit). Plaintiff argues: (1) the at-issue documents are "identical or substantially the same" as the Game Addiction Claim exhibit that Defendant had in its possession during the discovery period, (Doc. 116 at 10); (2) because Defendant knew of the Game Addiction Claim exhibit, Defendant must have known Mr. Malherbe and Mr. Vaaler's deposition testimony was inaccurate at the time it was made, (Doc. 116 at 15–16); (3) there is nothing to "cure" because Defendant strategically or negligently failed to ask Mr. Malherbe or Professor Franklyn about the Game Addiction Claim exhibit during their depositions, (Doc. 116 at 16); and (4) the at-issue documents are "relevant" to Professor Franklyn's critique of Defendant's expert, Hal Poret, and that while "no Facebook pages were relied on for Franklyn's opinions or conclusions," the at-issue documents "support Franklyn's conclusions." (*Id.* at 18).

To support its arguments, Plaintiff submits affidavits (Docs. 116-1 & 116-2) from Mr. Malherbe and Mr. Vaaler with its response that state that a portion

11

of their deposition testimony—that Plaintiff's name and logo never appear in the Facebook ads that Plaintiff creates for its clients—was "not clear or accurate." (Doc. 116-1 ¶ 14; Doc. 116-2 ¶ 22). The affidavits explain that Plaintiff sometimes creates "unbranded" Facebook pages, such as the Game Addiction Claim exhibit, that do not contain any information about Plaintiff's clients but do include Plaintiff's own name and logo. (Doc. 116-1 ¶ 7; Doc. 116-2 ¶ 24). Mr. Malherbe's affidavit also states that his deposition testimony to the contrary was only in reference to a single campaign. (Doc. 116-1 ¶ 13). The affidavits further state that Mr. Malherbe and Mr. Vaaler would have testified accurately regarding Plaintiff's advertising practices had Defendant asked them direct questions about the Game Addiction Claim exhibit. (Doc. 116-1 ¶ 32; Doc. 116-2 ¶ 24).

In its reply, Defendant argues that the Game Addiction Claim exhibit is not substantially similar to the at-issue documents because unlike the at-issue documents, the Game Addiction Claim exhibit is not a Facebook "post" or an "advertisement" containing Plaintiff's name and logo that users can interact with. (Doc. 126 at 1). Defendant further states that in light of Plaintiff's lack of production of ads containing Plaintiff's own name and logo[3]—and because Mr.

---

[3] Defendant represents that Plaintiff did not produce the Game Addiction Claim exhibit—instead, Defendant found the Game Addiction Claim exhibit on its own. (Doc. 126 at 2).

Malherbe and Mr. Vaaler testified that no such ads exist—Defendant "had no reason to believe other (or different types of) Facebook pages existed." (Doc. 126 at 1–2). Defendant also argues that Plaintiff was "the only party in a position to know of the alleged 'hundreds of Facebook pages . . . responsive to Defendant's requests.'" (*Id.* at 3 (citing Doc. 116 at 2, 11–14)). Defendant concludes that "Plaintiff cannot excuse belatedly produced new and different documents over a month after the close of discovery on the ground that there are some alleged similarities between the untimely documents and similarly undisclosed deposition exhibits." (*Id.*).

The Court finds that Defendant's possession of the Game Addiction Claim exhibit does not by itself establish that Plaintiff's late disclosure of the at-issue documents was harmless. Notwithstanding the affidavits contained in Plaintiff's response, the record shows that Mr. Malherbe and Mr. Vaaler offered unqualified deposition testimony stating that Plaintiff does not use its name or logo in the Facebook ad campaigns that Plaintiff creates for its clients. (*See* Doc. 98-1 at 149:4–20; Doc. 98-3 at 66:7–20). Defendant was justified in relying on their testimony. Mr. Malherbe and Mr. Vaaler are Plaintiff's witnesses who were designated to testify about the services that Plaintiff provides and thus are in a superior position to know how Plaintiff uses its mark. Defendant was not obligated to doubt or seek to correct their testimony merely because Defendant

discovered a single document that arguably undermines their testimony. The testimony of Plaintiff's own witnesses is Plaintiff's responsibility to correct, and Plaintiff could have properly done that before the close of discovery pursuant to the procedures outlined in Rule 30(e).

The Court finds that Defendant would be unfairly prejudiced if Plaintiff were permitted to rely on the at-issue documents. Defendant states that it relied on Plaintiff's lack of production of any discovery similar to the at-issue documents, as well as Mr. Malherbe and Mr. Vaaler's deposition testimony, to argue in its *Daubert* motion that the record belies Professor Franklyn's opinion that "secondary consumers" view Plaintiff's mark in Facebook campaigns. (Doc. 84 at 20–22). Allowing Plaintiff to introduce the at-issue documents after the discovery deadline would deprive Defendant of the opportunity to question Plaintiff's witnesses about the at-issue documents, including when and how Plaintiff uses "unbranded" Facebook advertisements. The only means of curing the prejudice to Defendant would be to re-open discovery to permit additional document production and depositions, which would require a continuation of the trial presently scheduled for November 2025. Thus, the Court finds that the trial of this case would have to be significantly disrupted to cure the unfair prejudice caused by Plaintiff's late disclosure of the at-issue documents.

Plaintiff argues the at-issue documents are "relevant" to Professor Franklyn's opinions and that the Court must consider "the public's interest" in "resolving questions related to intellectual property on their merits." (Doc. 116 at 16–18 (citing *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 3:10-cv-891-JBT, 2011 WL 5357833, at *4 (M.D. Fla. Nov. 3, 2011))).[4] But Plaintiff also states that Professor Franklyn "did not rely on these Facebook ads in coming to his conclusions in his report." (*Id.* at 10). Taking Plaintiff's claims at face value, the Court finds that the prejudice to Defendant outweighs the importance of this evidence to Plaintiff. The at-issue documents being merely "relevant" to Professor Franklyn's opinions is not sufficient to overcome the prejudice to Defendant. (*See* Doc. 116 at 17–18). To the extent Professor Franklyn did rely on the at-issue documents, the documents should have been served in his report and identified under Rule 26(a)(2)(B) and are excludable on that basis as well.

Lastly, Plaintiff argues against exclusion because Defendant has not shown that Plaintiff acted in bad faith. (Doc. 116 at 18–19). However, "[f]or the sanction of exclusion to apply, Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *Buccellati Holding Italia SPA*

---

[4] The *Graphic Packaging* case that Plaintiff cites refers only to patents, not trademarks. *See* 2011 WL 5357833, at *4 (emphasizing "the importance to the public at large of resolving questions of patent validity"). Nevertheless, the Court has considered the case insofar as it posits the courts' "typical heavy preference in favor of not excluding evidence, so that cases can be decided on their merits." *Id.*

*v. Laura Buccellati LLC*, No. 13-21297-CIV, 2014 WL 11880980, at *1 (S.D. Fla. Apr. 10, 2014) (citing *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329–30 (4th Cir. 2011)). The relevant inquiry for excluding evidence under Rule 37(c)(1) is whether Plaintiff's late disclosure was substantially justified or harmless, not whether Plaintiff acted in bad faith. To the extent that a late disclosure in violation of Rule 26 causes prejudice to the opposing party, a district court is well within its discretion to exclude the evidence. *See, e.g., Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824–25 (11th Cir. 2009) (affirming exclusion of expert witness not timely identified in Rule 26(a) disclosures). The Court finds that Plaintiff's late production of the at-issue documents was not harmless and that exclusion of the evidence is appropriate under Rule 37(c)(1).

    **C.**    **Monetary Sanctions**

Both parties move for monetary sanctions against one another arising out of this motion. (*See* Doc. 97 at 21–22; Doc. 116 at 19–20). First, Defendant argues that it is entitled to attorney's fees and costs pursuant to Rule 37(c)(1)(A) because Plaintiff's "dilatory tactics" have caused Defendant to expend substantial costs in seeking "the Court's intervention several times in the last few months." (Doc. 97 at 21). Defendant is referring to: (1) Plaintiff's untimely disclosure of Professor Franklyn's affirmative opinions, for which Defendant's motion to strike (Doc. 51) was granted, (*see* Doc. 70); (2) Plaintiff's motion to

amend the complaint and extend discovery (Doc. 62), which the Court denied, (*see* Doc. 77); (3) Plaintiff's noticing for deposition Defendant's chairman and CTO, for which Defendant's motion for protective order (Doc. 68) was granted, (*see* Doc. 132); and (4) Plaintiff's motion for reconsideration of the Court's order on Defendant's motion to strike (Doc. 81), which the Court denied, (*see* Doc. 105). In its response, Plaintiff does not directly engage with Defendant's argument.

"Rule 37(c)(1) provides that the Court 'may' order reasonable expenses and attorneys' fees if a party fails to provide information required by Rule 26(a) or (e)." *Givens v. Isuzu Motors Am., LLC*, No. 3:09-cv-133-JRK, 2009 WL 10669838, at *1 (M.D. Fla. Sept. 14, 2009). But "[t]he trial court has discretion in imposing sanctions for a party's failure to cooperate in discovery." *Hache v. Damon Corp.*, No. 8-07-cv-1248-EAJ, 2007 WL 4365658, at *1 (M.D. Fla. Dec. 13, 2007) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)).

The Court, in its discretion, declines to order payment of attorney's fees and costs. The Court has ruled in Defendant's favor on a few matters in recent months, but Defendant has not shown that Plaintiff has engaged in unusually "dilatory" or "frivolous" conduct. Indeed, Defendant did not even prevail on all the matters that it referenced, as Defendant's motion for protective order regarding Plaintiff's deposition notice of Patrick Traughber (Doc. 76) was denied

17

(Doc. 132). Defendant has also not explained why exclusion of the at-issue documents is not a sufficient remedy for their late disclosure.

In its response brief, Plaintiff states that Defendant should be sanctioned "pursuant to the Court's inherent authority" for "misrepresenting the record." (Doc. 116 at 19). Plaintiff's argument pertains only to whether the Game Addiction Claim exhibit is substantially similar to the at-issue documents. (Doc. 116 at 6–7, 20). Because the Court already rejected this argument, Plaintiff's request for sanctions must be denied as well. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017) (cautioning that "[t]he inherent power must be exercised with restraint and discretion").

## IV.   CONCLUSION

For the reasons explained above, it is **ORDERED** that Defendant's motion (Doc. 97) is **GRANTED** in part and **DENIED** in part. The at-issue documents (XSM0232851, Doc. 98-17; XSM0232852, Doc. 98-18; XSM0232853, Doc. 98-19; and XSM0232854, Doc. 98-20) are **EXCLUDED** from evidence that may be relied upon at trial or in resolving the parties' motions. Defendant's request for attorney's fees and costs (Doc. 97 at 21) is **DENIED**. Plaintiff's request for sanctions (Doc. 116 at 19) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on August 11, 2025.

JOHN ANTOON II

                                      United States District Judge

Copies furnished to:
Counsel of Record